ROBERT H. McCUTCHEON, Respondent and Appellant, *v.* CHARLES DITTMAN, Appellant, Impleaded with Others.

SOLOMON ISAACS et al., Respondents.

ATTORNEY AND CLIENT — WHEN CLIENT CHARGEABLE WITH KNOWLEDGE ACQUIRED BY ATTORNEY. Where the attorney of an attaching creditor who has levied upon the interest of his debtor in stock pledged as collateral security for a loan by a third person, subsequently acts as attorney for the lender in making a sale of the stock at public auction to pay the loan, at which sale the attaching creditor bids in the stock for an amount sufficient to pay the loan and expenses of sale, the attorney must be considered as the agent for both creditors in making the sale, and the creditor so purchasing is bound by any invalidity of the sale in respect of demand or notice of which the attorney had knowledge.

*McCutcheon* v. *Dittman*, 23 App. Div. 285, modified.

(Argued June 15, 1900; decided October 9, 1900.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 28, 1898, modifying and affirming, as modified, a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to recover certain shares of stock, or the value thereof, which had been pledged by plaintiff with the defendant Dittman as security for the payment of a promissory note for $1,000.

The facts, so far as material, are stated in the opinions.

*J. E. Ludden* for plaintiff, respondent and appellant. The referee was right in holding that the defendants S. Isaacs & Co. were chargeable through their attorney with the knowledge of the circumstances under which the sale was made, and, therefore, were not purchasers and are not now holders of the stock in good faith. (*Bennett* v. *Buchan,* 76 N. Y. 386; *Constant* v. *University of Rochester,* 111 N. Y. 611; *Slattery* v. *Schwannecke,* 118 N. Y. 543; *Hyatt* v. *Clark,* 118 N. Y. 569; *Denton* v. *O. O. Nat. Bank,* 150 N. Y. 126.)

*David B. Hill* and *Leo G. Rosenblatt* for defendants, appellants and respondents. S. Isaacs & Co., as purchasers, were not chargeable with constructive notice of irregularity in the notice of sale, although the person who, as Dittman's counsel, mailed the notice, happened at the same time to be the attorney of record for respondents in their collateral attachment suit (*Benedict* v. *Arnoux,* 154 N. Y. 715; *Denton* v. *O. O. Bank,* 150 N. Y. 126; *Slattery* v. *Schwannecke,* 118 N. Y. 543; *Constant* v. *University of Rochester,* 111 N. Y. 604; *U. U. Bank* v. *G. I. Co.,* 71 Fed. Rep. 473.)

BARTLETT, J. The judgment should be reversed as to the defendants S. Isaacs & Company.

We agree with the referee that, under all the circumstances, S. Isaacs & Company are chargeable with the knowledge of their attorney in regard to the stock in question and cannot be deemed *bona fide* purchasers thereof at the sale. It is

undoubtedly the settled rule that a principal is only chargeable with notice communicated to, or knowledge acquired by his agent in another transaction at another time and when he was acting for another principal when clear proof is made that the knowledge or notice was present in the mind of the agent at the time of the transaction in question. (*Constant et al., Executors, etc.,* v. *University of Rochester,* 111 N. Y. 604, 611.) S. Isaacs & Company are not only brought within the rule above stated, but the facts show essentially one transaction in the interest of S. Isaacs & Company which renders the rule inapplicable.

In November, 1895, the defendant Dittman loaned plaintiff $1,000.00, secured by fifty-three shares of the United States Printing Company's stock.

In December, 1895, S. Isaacs & Company began an action against plaintiff and others and attached the interest of plaintiff in the stock held by Dittman. In this action David Calman appeared as attorney for S. Isaacs & Company, and thus became advised a year before the public sale of the stock by Dittman that plaintiff had a large interest in the stock above the amount for which it was pledged. It will not be disputed that S. Isaacs & Company are chargeable with this knowledge.

The par value of the stock was $5,300.00, and it was alleged in the complaint that it was actually worth $4,240.00.

A year later, in December, 1896, the same attorney, acting for defendant Dittman as alleged, had in charge the public sale of this stock, which is found by the referee to have been irregular, wrongful and a conversion thereof by reason of no previous demand of payment of the plaintiff's indebtedness, and no legal notice of sale.

At this sale S. Isaacs & Company bid in the stock for $1,083.78, enough to pay Dittman's loan to plaintiff. It is evident that the precise knowledge of this situation was in the mind of the attorney at the time of the sale, within the rule referred to above, so that it is of no importance whether he was acting for Dittman or S. Isaacs & Company.

It is equally apparent that these facts show one transaction

in regard to the stock. In the first transaction the attorney attaches the interest of plaintiff in the stock subject to the pledge, and in the second proceeding, by means of a sale without demand or notice, sought to extinguish plaintiff's interest in the stock without payment of its full value and vest it in his clients, S. Isaacs & Company.

The latter now seek to retain the fruits of this transaction, notwithstanding they have been tendered their bid and interest, by invoking the rule that their attorney only represented Dittman at the sale and consequently they are *bona fide* purchasers.

We agree to the affirmance of the judgment of the Appellate Division as to defendant Dittman, but are of opinion it should be reversed as to S. Isaacs & Company.

The judgment of the Appellate Division as to defendant Dittman should be affirmed, with costs; judgment as to defendants S. Isaacs & Company should be reversed and a new trial ordered, with costs to abide the event.

Parker, Ch. J. (dissenting). In November, 1895, McCutcheon, this plaintiff, borrowed one thousand dollars of the defenddant Dittman, giving therefor his promissory note, together with fifty-three shares of the United States Printing Company's stock as collateral. Before the note matured S. Isaacs & Company attached McCutcheon's interest in the stock pledged to Dittman. Negotiations entered into between McCutcheon, Dittman and S. Isaacs & Company resulted in a tripartite agreement, by which it was agreed, among other things, that the one-thousand-dollar note should be renewed for the further period of six months, and that Dittman should hold the United States Printing Company's stock as collateral, *first*, for the payment of the one-thousand-dollar note ; *second*, for the payment of any sum that should be found due to S. Isaacs & Company in the suit in which the attachment was issued, and, *third*, the overplus to be turned over to McCutcheon. In pursuance thereof the note was renewed and it became due November 20, 1896, at which time it was presented for payment to

the bank where it was made payable, but it was not paid and the note was duly protested. Very shortly afterwards the stock was by McCutcheon turned over to Adrian H. Muller & Sons for sale, and in their notice of sale of securities for December 2d, 1896, they inserted "53 shares U. S. Printing stock." The stock was not otherwise referred to in the notice of sale, and on the second day of December, at public auction, it was struck down to defendants, S. Isaacs & Company, for the sum of $1,083, which was a little more than the amount due on Dittman's note for principal and interest. One Calman acted as the attorney for Dittman in the matter of selling the stock, and on November 28th he cut out of the New York *Times* Adrian H. Muller & Sons' notice of sale of securities which included "53 shares of U. S. Printing stock," and after making a mark opposite each end of the line referring to that stock, he inclosed it in an envelope duly addressed to McCutcheon, and caused the same to be mailed. No other notice was given or attempted to be given to McCutcheon, who did not learn that a sale of his stock was threatened until after S. Isaacs & Company had become the purchasers. Then he attempted to get it back, but failing in his effort, he brought this suit on the equity side of the court, alleging the facts and praying judgment that the defendants be required to turn over the stock to him, or that if this could not be done, that the defendants be decreed to pay him the value of the stock.

The suit was tried before a referee who directed judgment against the defendants, Dittman and S. Isaacs & Company, either for a return of the stock or for its value; the ground upon which he directed judgment against Dittman was that he had failed to cause to be given to McCutcheon such a notice of the sale of the stock as the law required, and the recovery against S. Isaacs & Company was predicated on the fact that Calman, who was Dittman's attorney in the matter of the sale of the pledge, was also their attorney in the attachment suit and in this action and that S. Isaacs & Company were chargeable with the knowledge which he acquired while

conducting the proceedings for the sale of the stock in behalf of Dittman. The final judgment entered upon the report of the referee, and the intermediate proceedings had, was affirmed by the Appellate Division in so far as it directed judgment against the defendant Dittman, but was reversed as to the defendants composing the firm of S. Isaacs & Company.

There are several questions discussed on Dittman's appeal relating to the practice adopted in this case and to the merits. It was within the power of the court to render the judgment that it did and the errors of procedure, if such there were, seem not to have been brought to the attention of the courts below by exception or otherwise, and criticism of them cannot be listened to for the first time on this review.

The only question, therefore, that need be referred to is whether a sufficient notice of sale of the stock was given to McCutcheon. It is the law in this state, in the absence of a contract controlling the question of notice, that the pledgor must have notice of the time and place of sale of the pledge. This rule of law was created for the purpose of protecting the pledgor, and it affords him an opportunity to attend the sale and see that it is fairly conducted, to exert himself in procuring buyers, thus, perhaps, enhancing the price, and enables him to assert the right belonging to him of redeeming the pledge at any moment before the sale is actually made. A notice that does not fairly apprise the pledgor of the time and place of the sale of his stock is not within the requirement of the law, and should not be brought within it by any strained construction. Now, it is true that by this publication Adrian H. Muller & Sons did give notice to all that should see fit to read their advertisement that they would sell at a given hour, on the second day of December, " 53 shares of U. S. Printing Stock," and it turns out that such stock was the stock pledged by McCutcheon, but the notice did not state that it was the stock pledged by McCutcheon to Dittman. There was nothing in the notice which identified the fifty-three shares of stock so advertised to be sold as the shares which had been

pledged by McCutcheon to Dittman; indeed, there was nothing in it to have put him on guard had he read it except that the number of shares to be sold was precisely the number of shares that the defendant pledged to Dittman.

Without that further amplification of which the subject is capable I state my conclusion to be that the courts below were right in the determination that the so-called notice did not meet with the requirements of the law.

It is further urged in Dittman's behalf that an exception taken to the ruling of the court in admitting evidence as to the value of the stock on the day of its sale, constituted an error; and also that there was no legal proof, other than that furnished by the auction sale, of the value of the stock. A question was asked to which objection was made, which did not call for the market value of the stock and the objection was overruled and an exception taken, but the witness did not answer that question; instead, he asked the question: "What do you mean by value?" And the attorney replied:. "Do you know the market value of it?" It appears, therefore, that before any attempt was made to answer the objectionable question, it had been modified and put in proper form. Later the witness undertook to fix its value from his knowledge of the inventory value of the property and the surplus account of the company, but this evidence was not objected to, nor was a motion made to strike it out.

As to the contention that there was no legal proof of damage, it is said, first, that the record contains no evidence of the market value of the stock except that established presumptively by the auction sale itself. This is true, but there is other evidence of value than that of market value; still as to that evidence the appellant insists that it should not have been received until after it had been shown that the stock did not have a market value — a proposition that cannot be gainsaid; but the difficulty is that the attention of the trial court was not called to the fact, by objection, that the plaintiff had omitted to show that the stock was without market value, and the court may well have proceeded on the theory that the fact

46

that the stock had no market value was so well known to counsel on both sides that objection was not made by the defendant when the plaintiff attempted to prove the elements tending to show value, as a party may always do when the chattel has no market value. While the witness said that he took into account the inventory value and surplus account, he did not give the details so that the jury could form an opinion from the facts thus given, but instead gave his own opinion. The testimony as given was open to objection, but as objection was not made we must treat the evidence in the form in which it was brought in as having been regarded as satisfactory to both parties, and, thus treating it, it cannot be questioned that the referee's finding as to value has evidence to support it.

The plaintiff appeals from the reversal of the judgment against the members of the firm of S. Isaacs & Company, and as the trial was had before a referee we are required to presume that the judgment was not reversed upon a question of fact, and the question of law presented to that court in this case was whether the facts found supported the conclusion of law. (*National Harrow Co.* v. *Bement & Sons,* 163 N. Y. 505.) The Appellate Division has reached the conclusion that they do not, and that that court is right will sufficiently appear from a statement of the facts found upon which the conclusion was predicated by the referee that S. Isaacs & Company were chargeable with the knowledge of the attorney who conducted the proceedings.

If the findings showed that Calman had acted as the attorney for S. Isaacs & Company in any way in the proceeding to sell the stock, or had bought the stock for them, then would the conclusion of law of the referee have support in the facts found. But the findings contain no hint to that effect. They do not even suggest that Calman either advised them to buy the stock or knew that they contemplated making the purchase. What the findings do state is that Calman was the attorney for S. Isaacs & Company in two actions, viz., the attachment suit and this action. The portion of the finding relating

to that subject, after referring to the commencement of the action in which the attachment was issued, reads as follows: "The said action was pending, and said attachment was in force on the second of December, 1896, the day the said stock was sold by Dittman, as above stated. The attorney for Isaacs & Company in said action was also the attorney for Dittman in the proceedings taken for the sale of said stock, and is the attorney for the defendants Dittman and S. Isaacs & Company herein."

It seems to me that it cannot be held that because Calman appeared for all of the defendants in this action, that, therefore, they are chargeable in a prior proceeding with the knowledge that their present attorney acquired in such prior proceeding, or that because they once brought an action and to that end employed a lawyer, they are chargeable with any and all knowledge that their former attorney may have become possssed of in some subsequent proceeding. Unless one of these propositions is unsound this judgment should stand, and it is difficult to find any basis for such a claim in the face of the well-established general rule that a principal is chargeable with the knowledge of his attorney only in matters in which the attorney acts for him.

To illustrate with this case, had Calman bought in the stock for S. Isaacs & Company he would have been acting in their place and stead, and they would have been chargeable with the knowledge that he had acquired in the earlier stages of the same transaction. But this court has never gone further in the direction of holding a principal chargeable with the knowledge of facts communicated to his agent than to hold that such facts must be communicated, either in the matter in which the latter represents the former, or prior thereto, but under circumstances surrounding and following it of such a nature as to cause such facts to be present in the mind of the agent at the time of doing the act for the principal, which the latter would have protected on the ground that it was done in good faith and necessarily without knowledge of the facts. (*Constant* v. *University of Rochester*, 111 N. Y. 604,

611.)    In other words, there must be a principal and an agent in the particular transaction as to which it is charged that the apparent advantage of the principal can be overcome by proof, that while he may not have known the truth, the agent, who represented him in the transaction and who stood in his shoes as to it, did know    It was said in the *Constant Case* (*supra*) that the courts have not gone further, and it may be added now that there is no room for such an extension of the doctrine as will reach a case where there does not exist the relationship of principal and agent, for it has its foundation in that relationship.

These findings contain, as I have said, no hint that Calman was acting for S. Isaacs & Company in any respect whatever in the proceeding to sell the stock, and he was not, therefore, their agent in that matter ; but as this was a short decision, the Appellate Division, as was their duty, looked into the record to see whether there were any facts in support of the decision of the referee as to S. Isaacs & Company, and the learned presiding justice summed up the result of the investigation as follows : " In the case at bar there is no evidence whatever that Calman did anything in reference to this stock as attorney for Isaacs & Co. after the extension had been signed six months before the sale took place.    There is no evidence that he had any communication with them in regard to their becoming purchasers upon the sale, or that he acted in any way in connection with the said sale as their attorney."

The Appellate Division was, therefore, right in holding that as to the defendants, S. Isaacs & Company, the findings did not support the conclusions of law as against them, and it follows that the judgment should be affirmed.

Haight, Vann and Landon, JJ., concur with Bartlett, J., and Cullen, J., concurs in result; O'Brien, J., concurs with Parker, Ch. J.

Judgment accordingly.