THE CENTRAL TRUST COMPANY OF NEW YORK, as Substituted
   Trustee of the Estate of ISABEL VON LINDEN, Respondent,
   v. GEORGE W. FOLSOM, Appellant, Impleaded with Another.

PRINCIPAL AND AGENT — WHEN PURCHASER OF BOND AND MORTGAGE
IS ESTOPPED FROM DENYING AUTHORITY OF AGENT TO RECEIVE PAY-
MENT.   Where an agent, who invests for his principal in an outstand-
ing bond and mortgage, is permitted to collect the interest thereon and to
retain possession and control of the security, he has apparent authority
after maturity to receive payment thereof, and his principal is estopped
from denying that he possessed such authority.

*Central Trust Co.* v. *Folsom,* 38 App. Div. 295, reversed.

(Argued April 22, 1901; decided June 4, 1901.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered March
24, 1899, reversing a judgment in favor of defendants entered
upon a decision of the court on trial at Special Term and
granting a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*George V. N. Baldwin* for appellant.   Where a mortgagee
permits an attorney who negotiates a loan to retain in his
possession the bond and mortgage after the principal is due,
and the mortgagor, with knowledge of that fact and relying
upon the apparent authority thus conferred, shall make pay-
ment to such attorney, the mortgagee will not be permitted to
deny that the attorney possessed the authority which the
presence of the securities indicated that he had.   ( *Whitlock*
v. *Waltham,* 1 Salk. 157 ; *Wostenholm* v. *Davis,* Freem. Ch.
289 ; *Williams* v. *Walker,* 2 Sandf. Ch. 325 ; *Hatfield* v.
*Reynolds,* 34 Barb. 612 ; *Megary* v. *Funtis,* 5 Sandf. 376 ;
*Merritt* v. *Cole,* 9 Hun, 98 ; *Wardrop* v. *Dunlop,* 1 Hun, 330 ;
*Frank* v. *Tuozzo,* 26 App. Div. 447 ; *Doubleday* v. *Kress,*
50 N. Y. 410 ; *Smith* v. *Kidd,* 68 N. Y. 130.)

*Alfred J. Taylor* for respondent.   In dealing with the
trustee under the marriage settlement, the defendant Folsom,

having knowledge of the trust, was bound to take notice of the conditions and limitations of the deed creating the trust. (Perry on Trusts, §§ 287, 402, 405 ; *Kirsch* v. *Tozier*, 143 N. Y. 390 ; *Suarez* v. *de Montigny*, 1 App. Div. 494 ; *Swan* v. *Produce Bank*, 24 Hun, 278 ; *McPherson* v. *Rollins*, 107 N. Y. 316.) The trustee, under the conditions of the deed creating this trust, could not delegate his powers. The exercise of those powers was personal and confidential, and affected not only the beneficiary named in the deed, but also her heirs and legal representatives. (Perry on Trusts, §§ 287, 402, 405 ; *Berger* v. *Duff*, 4 Johns. Ch. 368 ; *Newton* v. *Bronson*, 13 N. Y. 587.) Francis H. Weeks, as attorney or agent of Morison, trustee, had no real or apparent authority to receive payment of the principal of the mortgage in suit. (*Smith* v. *Kidd*, 68 N. Y. 130.)

CULLEN, J. The action was brought to recover possession of a bond and mortgage and certain assignments thereof from the defendant, the owner of the equity of redemption in the mortgaged premises who claimed to have received them on paying the mortgage. The controversy turns on the validity of that payment. The bond and mortgage were made by Benjamin R. Winthrop and others, trustees, and George Folsom and wife, to William E. Laight and another, trustees of Louisa M. Wilkes, on the 15th day of May, 1848, and after several *mesne* assignments were assigned to Ada L. Sutton (afterwards Ada L. Saalfield) on July 9th, 1883. One Francis H. Weeks, a lawyer, was the attorney for Mrs. Saalfield, and while she was the owner, the bond and mortgage and assignments remained in his possession. The appellant, Folsom, the owner of the equity of redemption, during this period paid the interest to Weeks. In May, 1886, he made such a payment to Weeks as attorney for Mrs. Saalfield and received from him a receipt on behalf of Morison, trustee. This was the only notice that Folsom at any time had that Mrs. Saalfield had transferred the mortgage. In June following Folsom paid to Weeks the principal of the mortgage with

the accrued interest and received from him the original bond and mortgage and the several assignments. The last two of these, that to Mrs. Saalfield and the assignment from Mrs. Saalfield to Daniel Morison as trustee, were unrecorded. Folsom returned these two assignments to Weeks with instructions to have them recorded and also to obtain a satisfaction piece from Morison, trustee, and retained the other instruments.

On November 29th, 1876, in contemplation of her marriage, the separate estate of Isabel Andrews (afterwards von Linden) was conveyed to Blandina B. Andrews on certain trusts therein specified. Mrs. Andrews having died, Daniel Morison was appointed trustee in her place in October, 1883. Morison employed Weeks, who was his attorney, to obtain an investment for the sum of seven thousand dollars belonging to the trust estate. Weeks brought the mortgage of Mrs. Saalfield to the attention of Morison, who looked at the mortgaged property and approved the security. Weeks thereupon obtained the assignment from Mrs. Saalfield, he having in his possession at the time the bond and mortgage and earlier assignments. The defendant Morison did not personally negotiate the transfer nor take any part therein except to approve the security and advance the funds. Weeks seems to have largely managed the administration of the trust for Morison. Morison knew that there was a Folsom mortgage, but could not swear positively that he ever saw the document. Morison was not in active business at this time, and it appears from his testimony that the securities of the trust estate together with his own were put in a tin box belonging to him and the box placed in the safe in Weeks' office and the key of the box intrusted to Weeks, so that, as a matter of fact, Weeks had always access to the box. Morison testified that the key was given to Weeks so that he might indorse any payments of interest which he might receive, but he denied that Weeks had any authority to receive the principal of the securities. In 1889 Morison resigned his trust and Weeks was appointed his successor. Weeks continued as trustee to

1893, when he was removed and the plaintiff appointed his successor. Weeks did not pay over to Morison or into the trust the moneys received by him from Folsom in payment of the mortgage, but appropriated such moneys to his own use. The trial court held that the payment to Weeks was a good payment to Morison, trustee, and that the defendant was entitled to hold the bond and mortgage which he had paid off. The Appellate Division by a divided court reversed the judgment of the Special Term and ordered a new trial.

The reversal was both on the law and the facts. For the appellant to succeed in this court it must appear that the undisputed facts entitled him to a judgment, those in controversy being resolved against him. The trial court might have found on the evidence that Weeks was authorized by Morison to receive the principal of the mortgage, but the inference to be drawn from the evidence was debatable, and, hence, for the purposes of this appeal, we must assume that Weeks was not given such authority. The only question presented for our determination is whether the possession by Weeks of the security, under the circumstances narrated, conferred upon him apparent authority to receive the principal, on which Folsom was entitled to rely. The general rule stated by all the text writers is that where an agent who negotiates a loan for his principal is allowed to retain possession and control of the security taken on the loan, he has apparent authority after maturity to receive payments for his principal. (Story on Agency, § 98 ; Meechem on Agency, § 273 ; Paley on Agency, § 274.) This rule has been repeatedly upheld by the decisions in this state. ( *Williams* v. *Walker,* 2 Sandf. Ch. 325 ; *Hatfield* v. *Reynolds,* 34 Barb. 612 ; *Wardrop* v. *Dunlop,* 1 Hun, 325 ; *Merritt* v. *Cole,* 9 Hun, 98 ; *Smith* v. *Kidd,* 68 N. Y. 130 ; *Crane* v. *Gruenewald,* 120 N. Y. 274.) In the last of the cases cited it is said by Judge PARKER : " So, if a mortgagee permits an attorney, who negotiates a loan, to retain in his possession the bond and mortgage after the principal is due, and the mortgagor, with knowledge of that fact and relying upon the apparent authority thus afforded, shall make a payment to

him, the owner will not be permitted to deny that the attorney possessed the authority which the presence of the securities indicated that he had." The learned Appellate Division did not question the general rule, but held that the present case did not fall within it because Weeks did not make the original loan on which the bond and mortgage were given. The only authority in this state in exact point is the case of *Williams* v. *Walker* (*supra*). In that case, as in the present, the attorney had not made the original loan, but had negotiated the purchase of an outstanding bond and mortgage. It was held that the rule applied, and that payments made to the attorney, so long as he held possession of the securities, were good payments to his principal. The case has been often cited with approval in the opinions of this court, and I cannot find that its authority has ever been questioned until in this case. But apart from authority we think that the fact that there was an investment in an existing security, instead of in an original loan, does not necessarily distinguish the cases in principle. The reason why a payment to an agent who has made the loan and who continues to hold the security is good payment to the principal, and why, under such circumstances, the agent has apparent authority to collect the debt is not very clearly stated in either the text books or the earlier decided cases. It was first established in England, and doubtless there grew out of the general course of business as to loans made through attorneys or scriveners. The fact that the attorney or agent has made the loan does not give him the authority to collect the debt, nor, it seems, does the mere possession of the security by the attorney give such authority. (*Doubleday* v. *Kress*, 50 N. Y. 410.) Both conditions must concur, that the agent acted for the principal at the inception of the business and that he holds the securities. It is said in the case last cited: " The reason of the rule that one who has made the loan as agent and taken the security is authorized to receive payment when he retains possession of the security is founded upon human experience that the payer knows that the agent has been trusted by the payee about the

same business, and he is thus given a credit with the payer."
Why does this reason not apply to the case before us? The
only question is the apparent authority of Weeks to act for
Morison. Morison had nothing to do with the original loan.
The investment was made by him when he acquired the bond
and mortgage from Mrs. Saalfield. The business, so far as
Morison is concerned, had its inception at this time, and in
that business Weeks acted for him. It is said by the learned
court below : " Authority to receive payment of the principal
is not to be inferred from the attorney having received the
interest, nor from the mere possession of the security, but it
must result from the whole control of the investment from
beginning to end by the attorney or solicitor. The lender
must part with his money to the solicitor for investment and
give him absolute control of the whole matter." We do not
imagine that by the statement that the lender must give his
attorney absolute control of the whole matter, the learned
court intended that the attorney must be given power to col-
lect the principal. If that were the case, the attorney would
have actual authority, and the whole discussion as to his appar-
ent authority would be needless. Subject to this limitation
the doctrine of the Appellate Division may be conceded, but
it is difficult to see why this case does not fall within it.
Weeks controlled the investment from the beginning and
held possession of the security, for, as already said, the invest-
ment began only when the mortgage was transferred from
Mrs. Saalfield to Morison. It is further said that " Folsom,
who made this payment, had no knowledge whatever of
Weeks' agency, and no reason to believe that Weeks was an
agent of Morison for any other purpose than to receive the
interest. He did not know what part, if any, Weeks had taken
in the purchase of this mortgage. So far as appeared to him
Morison had done nothing to warrant the inference that Weeks
was his attorney for any other purpose than to receive the
interest on that mortgage." It may be doubted whether
Folsom's ignorance of the fact that Weeks had made the
investment for Morison would affect the question of Weeks'

authority.  In *Crane* v. *Gruenewald (supra)* several payments were made by the mortgagor without seeing the bond and mortgage in the hands of the attorney to whom the payments were made.  It was held that the apparent authority of the attorney did not depend upon his production to the debtor of the securities, but on his possession of them.  We think, however, that under the circumstances Folsom was justified in inferring that Weeks, as attorney, had transacted the whole business for Morison.  He knew that Weeks had previously held possession of the bond and mortgage on behalf of Mrs. Saalfield, its then owner.  Morison gave him no notice that he had succeeded to the title of Mrs. Saalfield.  He continued to pay the interest to Weeks and received from Weeks a receipt in the name of Morison, trustee.  This doubtless apprised him that his creditor was no longer Mrs. Saalfield, but a person named Morison, but beyond this he had no knowledge of Morison.  He found that Weeks was authorized to collect the interest and that he still retained all the securities.  If Weeks had not made the investment for Morison, how was it that the securities still remained with the former?  We think that, under these circumstances, Folsom was justified in believing that Morison had intrusted the same power and confidence to Weeks that he would have done had Weeks made the loan in the first instance directly to Folsom, instead of taking an outstanding mortgage.

The order of the Appellate Division should be reversed and the judgment entered on the decision of the Trial Term affirmed, with costs in all the courts.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN, VANN and LANDON, JJ., concur.

Ordered accordingly.