Burke, J.
The plaintiff, Farr, entered into an agreement, evidenced by a memorandum, to purchase certain real property owned by the Newmans for $3,000. After the making of this agreement, which was not in a form to be recorded, the defendant, Hardy, took a conveyance of the subject property, paying $4,000 therefor. Hardy’s attorney, however, had knowledge of the outstanding agreement between Farr and Newman. This knowledge was acquired directly from plaintiff, who stood upon his rights although the attorney had decided that the agreement was unenforcible. The attorney did not inform Hardy of plaintiff’s alleged equity and Hardy then took the conveyance from the Newmans. Farr brings this action to compel Hardy to convey the property to him upon payment of $3,000.
The sole issue that merits discussion here is whether defendant Hardy may avoid the effect of his attorney’s knowledge of plaintiff’s equity, and the consequent application of the familiar maxim that he who takes with notice of an equity takes subject to that equity (Hodge v. Sloan, 107 N. Y. 244), by proof that the attorney also represented the grantors, the Newmans, in the transaction through which Hardy acquired title.
Defendant seeks to avoid the imputation of knowledge by the citation of cases holding that an agent’s knowledge is not imputed to his principal when the agent is defrauding (as in Benedict v. Arnoux, 154 N. Y. 715) or otherwise acting against the interest of his principal for the benefit of another (Utica Ins. Co. v. Toledo Ins. Co., 17 Barb. 132; Otsego Aviation Serv. v. Glens Falls Ins. Co., 277 App. Div. 612).
*187 The mere fact that the attorney acted for both parties in the real estate transfer, with defendant Hardy’s knowledge, cannot insulate defendant from his agent’s knowledge to the detriment of the otherwise superior right of a third party. Binding on this appeal is the finding of fact, made by the trial court and affirmed by the Appellate Division, that the attorney believed in good faith that plaintiff’s contract was unenforcible. That this belief was not Avithout foundation is demonstrated by the holding of the trial court that the memorandum was insufficient under the Statute of Frauds. (The Appellate Division reversed this finding in an opinion in.which we concur.) The attorney’s sincere belief in the unenforcibility of plaintiff’s contract precludes even a preliminary consideration of the applicability of the fraud cases to this case. It is certainly within the authority of an attorney to pass on legal questions potentially affecting the title of the purchaser whom he represents. Any criticism of the wisdom of consummating the transaction in the face of a threat of a lawsuit does not justify the conclusion that the attorney’s decision to proceed was actuated by bad faith—in the face of a contrary finding by the trier of the facts.
It is well-settled that the principal is bound by notice to or knowledge of his agent in all matters Avithin the scope of his agency although in fact the information may never actually have been communicated to the principal (Howell v. Mills, 53 N. Y. 322; McCutcheon v. Dittman, 164 N. Y. 355; Ratshesky v. Piscopo, 239 Mass. 180). Where, as here, there is a mere error of judgment on a legal question which the attorney had the professional responsibility of resolving, the rule that such knowledge is imputed to the principal applies (McCutcheon v. Dittman, supra; Howell v. Mills, supra). Here the attorney was employed to pass judgment on the state of the title by both parties. When he made a decision on which Judges have differed, it can hardly be found to be deceitful as a matter of law.
In addition, defendant’s contention that his attorney’s conflict of interest precludes the imputation of knowledge to him is made for the first time in this court. The argument was not made at the trial, and the evidence does not appear to have been introduced Avith that legal argument in mind. The memorandum *188 decision of the Trial Justice does not advert to it, nor does the Appellate Division’s opinion reflect concern with the attorney-client relationship beyond the finding that an agent’s negligent failure to disclose relevant facts to his principal does not bar imputation of such knowledge (Bennett v. Buchan, 76 N. Y. 386, 390-391) when it is not of a confidential nature (Matter of King v. Ashley, 179 N. Y. 281). On this state of the record it would be manifestly improper to now look at the evidence in a new light, draw an inference of duplicity therefrom, and then invoke the reasoning of the cases relieving a principal on that ground. The well-settled rule is that this court will not consider new arguments, whether of law or fact, or both, where it appears that if they had been raised at the trial an adequate defense might have been adduced by the other party (Osgood v. Toole, 60 N. Y. 475; Persky v. Bank of America Nat. Assn., 261 N. Y. 212; Cohen and Karger, Powers of the New York Court of Appeals [1952], § 162). Quite obviously, the assertion of faithlessness comes within the above description of arguments that may not be made for the first time in this court.
Therefore, both because of the affirmed finding of fact and the want of timeliness in raising the issue, no faithlessness on the attorney’s part may be assumed.
Since, however, the dissenting Judges have adopted the reasoning of the fraud cases, it is appropriate to make some observations on their applicability here. It seems to me that the presumption sometimes relied upon to support imputation, i.e., that an agent will communicate to his principal all relevant matters, has no place in this situation. If, under the substantive rules of equity and agency, actual knowledge by the principal is unnecessary, the presumption of communication becomes irrelevant. Such is the case here. The substantive rule of equity requires notice of outstanding equities, not necessarily actual knowledge. (Williamson v. Brown, 15 N. Y. 354; Phelan v. Brady, 119 N. Y. 587; Long, Notice in Equity, 34 Harv. L. Rev. 137; Seavey, Notice Through an Agent, 65 U. of Pa. L. Rev. 1.) The giving of notice is itself the legally significant act, wholly apart from actual knowledge. It then simply is a matter of combining the rules of agency with the notice rule of equity.
*189 When a prospective purchaser of real estate engages an attorney as his agent in the negotiations, he clothes the attorney with the incidental authority to receive in his behalf notice of outstanding equities. ‘ ‘ If, under the circumstances known to him, the obvious consequence of the principal’s own conduct in employing the agent is that the public understand him to have given the agent certain powers, he gives the agent those powers.” (Holmes, Agency, 5 Harv. L. Rev. 1, reprinted in Holmes, Collected Legal Papers [1952 ed.] 81.)
It may thus be seen that the question in this case is not an evidentiary one of presumptions or inferences; it is one of substantive law. If the agent was authorized to receive notice, and did receive it within the scope of his authority, that act as such binds the principal as does any act performed within an agent’s authority (In re Mifflin Chem. Corp., 123 F. 2d 311; Allen v. South Boston R. R. Co., 150 Mass. 200; Ætna Cas. & Sur. Co. v. Local Bldg. & Loan Assn., 162 Okla. 141; Mechem, Agency [4th ed., 1952] 90, n. 22). That is what happened here. Defendant’s appointment of an attorney to represent him in the acquisition of this real property, and, incidentally, to receive notice of any outstanding equity, was also an invitation to the public to give such notice to the attorney. When plaintiff did so, that act of the attorney, within the scope of his actual and apparent authority, bound his principal. A diversity of interest on the part of the agent is of no significance to third persons, such as plaintiff, unless it placed the agent’s act beyond his authority. Nothing can alter the fact that the attorney was held out as a proper person to whom notice of outstanding equities was to be given, and that his receipt of such notice from plaintiff was within his authority, both as actually conferred and as apparent to others. Clearly inapposite, therefore, are cases dealing with imputation of knowledge where knowledge itself is at issue, i.e., whether the principal is chargeable with the agent’s conversion (Innerarity v. Merchants’ Nat. Bank, 139 Mass. 332; Illinois Cent. R. R. Co. v. Fontaine, 217 Ky. 211) or whether a provision in an insurance policy is waived because of an agent’s knowledge (Otsego Aviation Serv. v. Glens Falls Ins. Co., 277 App. Div. 612, supra). Once the attorney received plaintiff’s notification, as authorized by defendant, even a fraudulent or self-serving conceal *190 ment of that fact from the defendant would no more extinguish plaintiff’s protection than would a debtor’s debt be revived where he had paid his creditor’s authorized agent for collection, who thereafter embezzled the money collected (Doubleday v. Kress, 50 N. Y. 410; Crane v. Gruenewald, 120 N. Y. 274; Central Trust Co. v. Folsom, 167 N. Y. 285).
The detailed analysis in the Restatement 2d of Agency fully supports the conclusion reached here. Notice affirmatively given by a third party is distinguished from knowledge acquired by an agent in the course of his investigations. Where, as here, a party gives an agent notice, which, if given directly to the principal would have a certain legal effect, the principal is bound by that effect, the agent’s adverse interest notwithstanding. Section 271 states: “ A notification by or to a third person to or by an agent is not prevented from being notice to or by the principal because of the fact that the agent, when receiving or giving the notification, is acting adversely to the principal, unless the third person has notice of the agent’s adverse purposes.” Even if the plaintiff had not affirmatively relied upon the agency of the attorney by giving notice, and the attorney had merely discovered plaintiff’s equity in the course of his title investigation, the principal would still be bound by such knowledge. A conflict of interest does not avoid the imputation of knowledge. Comment c under section 282 states in relevant part: “ c. Meaning of ‘ acting adversely.’ The mere fact that the agent’s primary interests are not coincident with those of the principal does not prevent the latter from being affected by the knowledge of the agent if the agent is acting for the principal’s interests.”
The illustration is as follows: “ 4. P appoints A to negotiate for the purchase of Blackacre, agreeing to pay him a commission of 10 per cent if he succeeds in persuading the owner to sell it and if A finds no defects in the title of record or otherwise. In investigating the title, A discovers an unrecorded equitable interest owned by T and, believing that the transaction will not be consummated if he reveals this equity to P, conceals his knowledge from P, who buys Blackacre upon A’s favorable report. P is affected by A’s knowledge.”
It is only when no notice is given by the third party and the agent totally abandons his principal’s business, as by taking *191 a bribe from the grantor for his silence, that the principal is unaffected by the agent’s knowledge. (§ 282, comment f, Illustration 5.)
Therefore, the judgment of the Appellate Division should be affirmed, without costs.