# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CT-01814-SCT

*F. BAXTER LANE AND KATHRYN LANE*

*v.*

*A.J.M. OUSTALET, JR., ALFONSO REALTY, INC.*
*AND JERRY ROSETTI, ESQUIRE*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/2000 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | ROBERT H. TYLER |
| ATTORNEYS  FOR APPELLEES: | JAMES C. SIMPSON, JR. |
| | RICHARD SALLOUM |
| | FREDRICK B. FEENY |
| | FRED MANNINO |
| | W.F. HOLDER, II |
| NATURE OF THE CASE: | CIVIL - BREACH OF CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED AS TO ALFONSO REALTY, INC. AND REVERSED AS TO A.J.M. OUSTALET, JR. AND JERRY ROSETTI, ESQUIRE.  THE JUDGMENT OF THE CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL - 05/13/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE FOR THE COURT:**

¶1.     This case, before the Court on petition of F. Baxter Lane and Kathryn Lane for writ of certiorari from the decision of the Court of Appeals, involves a real estate transaction in which the Lanes purchased a single family residence from A.J.M. Oustalet, Jr.  The transaction was brokered by Alfonso Realty, Inc., through its agent, Sherry Owen, with Jerry J. Rosetti serving as closing attorney. After taking possession of the house, the Lanes discovered extensive, unrepaired termite damage and received an estimate for repairs of $35,000. They filed suit against Oustalet, Alfonso Realty, and Rosetti for breach of fiduciary duty and negligent misrepresentation.  Evidence was presented indicating that Oustalet, Owen and Rossetti knew of the damage, that they knew that it was possibly quite extensive, and that they failed to pass this knowledge to the Lanes at or prior to closing.

¶2.     At the conclusion of the Lanes' case, the Circuit Court of Harrison County granted directed verdicts for all defendants.  The Lanes appealed,  and the case was assigned to the Court of Appeals, which affirmed in part and reversed in part.  The appellate court found that the Lanes failed to establish the breach of contract charges against the seller because he did disclose a termite problem  and told Owen to "do what was necessary to have the problem corrected." *Lane v. Oustalet*, 850 So. 2d 1143 (Miss. 2002).

¶3.      As to Rosetti, the Court of Appeals held that the buyers failed to meet the burden of proof with regard to his duty as closing attorney when they failed to offer expert testimony on the prevailing standards of professional care.

¶4.      The Court of Appeals also held, however, that, as a dual agent, Alfonso Realty had a heightened fiduciary duty and that the purchasers met the burden of proving that Alfonso breached that duty, Therefore, it reversed and remanded as to that defendant.

¶5. Following the Court of Appeals' decision, the Lanes and Alfonso Realty filed petitions for certiorari with this Court. Alfonso Realty's petition was denied, and that of the Lanes has been granted. We affirm the Court of Appeals judgment as to Alfonso but reverse as to Oustalet and Rossetti. Accordingly, we reverse the circuit court's judgment and remand this case for a new trial as to all three defendants.

**FACTS**

¶6. In 1996, the Lanes, having made plans to move from New York to the Mississippi Gulf Coast, contacted Sherry Owen of Alfonso Realty and ultimately found Oustalet's residence that they wished to purchase. The parties agreed to have Alfonso act in a dual agency capacity and executed a sales contract.

¶7. Prior to signing the Contract of the Sale and Purchase of Real Estate, the buyers received the Seller's Disclosure Statement that included a notation that the home had prior termite infestation and repaired damage. The sales contract includes a provision requiring the seller to provide a termite certificate prior to or at closing, which reads pertinent part:

> TERMITE CERTIFICATE AND RESPONSIBILITY OF BROKER. Seller shall, as a condition of sale, furnish Purchaser, prior to or at closing, a closing certificate from a licensed, termite company, that subject property shows no evidence of termite or other wood destroying insect infestation. If such infestation exists, seller shall furnish warranty of approved treatment and correct any structural damages caused by such infestation. If cost of said treatment is prohibitive to seller, or, if buyer deems damage unacceptable, contract shall be declared null and void and earnest moneys shall be refunded. By signing below, both Purchaser and Seller acknowledge that the Broker did not recommend any pest control company, in any way warrant the inspection or treatment made by the company, and is in no way responsible for any termite damage.

A special clause is also included in the sales contract allowing for a home inspection to be conducted within five days of the signing of the sales contract.

¶8. At Alfonso's request, an Orkin Pest Control technician performed the pest inspection and completed the Mississippi Official Wood Destroying Insect Report, also referred to as the closing certificate or termite inspection report, on November 6, 1996. The report indicated unrepaired termite damage and recommended that a qualified expert be consulted to determine whether the damage needed to be repaired.

¶9. Orkin delivered this report to the closing attorney, who then notified Owen at Alfonso Realty of the unrepaired damage, and Owen arranged for a contractor who had previously repaired termite damage to the home to examine the damage. The contractor inspected the property and reported to Owen that, in his opinion, there was no loss of structural integrity. Owen testified that she notified the seller and the attorney, but did not notify the buyers. Rather, she relied on the attorney to include a copy of the termite report in the closing documents. She further testified that by obtaining the report and the home inspection arranged prior to the closing, she was doing everything she could to fulfill her duties to both the seller and the buyers.

¶10. The trial court concluded as a matter of fact that the buyers did not receive the termite inspection report at closing. The closing was conducted on November 18, 1996, and Rosetti testified that he was sure that he showed the buyers a copy of the contractor's report. However, he could not say with certainty due to the large volume of closings he conducted during that week, and he apparently did not discuss it with them. He relied upon the fact that the termite inspection report was included in his closing documents and that it was his general practice to deliver it. The buyers expressly denied receiving the termite inspection report or the report of the contractor engaged by Owen.

¶11. The Lanes took possession of the home shortly after closing. They requested and were provided a copy of the Orkin report from Rosetti on January 20, 1997, and obtained an inspection from Terminix

which revealed an area of 750 to 800 square feet of damage. The Lanes then obtained estimates from two different professional who both testified at trial that the cost of repair would be over $35,000.00.

¶12.    The Lanes' petition presents two questions for consideration:

**1. When an agent serves the dual interest of two principals, should this Court recognize an exception to the general rule of agency that notice to the agent is constructive notice to the principals?**

**2. When a claim of legal malpractice is based not on a violation of a standard of care, but on a violation of a standard of conduct, is expert testimony necessary?**

## DISCUSSION

### Standard of Review

¶13.    We have stated:

The standard of review in cases where a directed verdict has been granted is as follows: "[t]his Court conducts a de novo review of motions for directed verdict. . . . If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted." *Pace v. Fin. Sec. Life of Miss.*, 608 So. 2d 1135 (Miss. 1992) (citations omitted).

*Entergy Miss., Inc. v. Bolden*, 854 So. 2d 1051, 1054 (Miss. 2003. The Court of Appeals applied this standard in this case, as shall we.

### The Agency Issue

¶14.    The buyer, the real estate agent, and the attorney each knew of the termite inspection report and of the report of the contractor engaged by Owen. Each argues that it was the responsibility of the others to inform the buyers, who deny receiving both reports. Each would have us impute to the buyers constructive knowledge of these important documents through the agency of either the real estate agent or the attorney.

5

¶15.    The law of agency generally imputes knowledge and information received by an agent in conducting the business of a principal to the principal, even where that knowledge or information is not communicated by the agent to the principal. *Pittman v. Home Indem. Co.*, 411 So. 2d 87, 89 (Miss. 1982) (citing *Home Ins. Co. of N.Y. v. Thornhill,* 165 Miss. 787, 796, 144 So. 861, 863 (1932). See also *Weathersby v. Gore*, 556 F.2d 1247, 1251 (5th Cir. 1977) (applying Mississippi law). This general principle is fundamental to commerce; without the ability to rely on communications through representatives most trade would halt. The Court of Appeals relied on this principle in holding that, as a matter of law, the seller here satisfied his contractual obligation to the buyers by relying on the agents to communicate with them.

¶16.    Here, however, Alfonso Realty served two masters, the buyer and the seller. Miss. Code Ann. § 73-35-21, allows such representation by real estate professionals if the dual representation takes place with the knowledge of all parties. In addition, the trial court found that Rosetti as well as Alfonso represented both parties. The Lanes argue that there should be an exception to the rule of imputed knowledge when the agent is acting in a dual capacity for two principals. The argument is that imputing the knowledge of the agent to both principals whose interests may become adverse is unreasonable and unfair. On appeal, the Lanes further argued that the attorney breached his fiduciary duty, not only in failing to inform them of the documents, but also in his failure to ensure that the seller complied with all of his contractual obligations. This argument proceeds to conclude that it is improper to constructively impute the knowledge of the seller to the Lanes, via the attorney, when it is unclear what principal he was representing when he received the termite inspection report.

¶17.    In a number of jurisdictions, knowledge of a dual agent, acquired in the course of his employment, at least where the agent has not acted out of self interest or fraudulently, has been held, as between the

6

principles, to be imputed to each of the principles even if not actually transmitted to them. *Carlton v. Moultrie Banking Co.*, 152 S.E. 215 (Ga. 1930); *Farr v. Newman*, 199 N.E.2d 369 (N.Y. 1964) (holding the rule applicable as to third parties.)

¶18. In an opinion which is somewhat at odds with *Farr*, at least one New York appellate court, recognizing that an agent serving dual interests occupies "a field of extremely delicate relationships," observed:

> [t]he important thing about the case in hand, however, is not fraud or the authority of the agent. It is the fact that when an agent undertakes to act in a transaction for two parties whose interests are or can become adverse, as a reasonable man might foresee, knowledge of facts arising from the transaction is not deemed the knowledge of the principal to operate as a waiver or to work otherwise to his detriment, unless the principal has actual and not merely constructive knowledge of the true facts.

*Ostego Aviation Serv. Inc. v. Glens Falls Ins. Co.*, 102 N.Y.S. 2d 344, 349 (N.Y. App. Div. 1951), cited with approval in *C.B. & T. Co. v. Hefner*, 651 P. 2d 1029 (N.M.Ct. App. 1982.) ¶19.

Alabama has also held that where an agent occupies a dual relation, notice acquired by him in such other agency is not binding on the principal. *Florence v. Carr*, 148 So. 148, 149 (Ala. 1933).

¶20. It has been said also that even where there is no ethical breach, "an attorney must act with the greatest circumspection in the representation of multiple clients where their exists a possibility that their interest may conflict or be at cross purposes." *Stump v. Flint*, 402 P.2d 794, 801 (Kan. 1965) (attorney representing seller and purchaser in real estate transaction.) Put differently, whether real estate broker or attorney, although a professional may be permitted under law to represent both parties to a transaction, as a dual agent he must proceed with a heightened since of duty and conduct to assure that he serves both masters' interests fully.

7

¶21. The problem with rigidly imputing knowledge of the agent to both principals in a dual agency context is clear. Simply put, if everyone is responsible, then no one is responsible. In such a situation, the imputation, based on the presumption that the agent will do what is expected of him becomes a fiction which interferes with rather than promotes commerce and the interest of full disclosure. A proper analysis requires that we recognize that in a dual agency two distinct agencies are vested in the agent with separate duties and responsibilities as to each principal. If Alfonso and Rosetti, as agents of Oustelat, failed to communicate required information to the Lanes, then Oustelat breached his contract through the neglect of his agents. If, on the other hand, Oustelat delivered the information to Alfonso and Rosetti, *as the agent of the Lanes*, they are deemed to have received it and have no complaint against Oustelat. The arguments become circular and cannot lead to a resolution of the equities between the buyers and the sellers. No doubt, this can create special difficulties for the dual agent, but they are difficulties inherent in choosing to serve two masters.

¶22. We cannot establish a bright line for all cases as to whether knowledge held by the dual agent is to be imputed to either or both principals. Here, the jury could have inferred that Oustalet, in telling Owen to take care of the matter concerning termite certificate and any evaluation of the damage, was speaking to her *as his own representative*. In resolving that question, we better approach the dilemma as to Oustelat by asking whether the seller was acting reasonably in relying on the dual agents–the real estate agent and the attorney–to attend to the matter and in believing that they would properly inform the buyer. The question of Oustelat's liability should have been submitted to the jury.

¶23. As to Alfonso Realty, the Court of Appeals correctly held that the real estate agency breached its duty to the buyers in simply assuming that the attorney would provide the termite inspection report to them. Owen had important information in her possession–the termite inspection report and the later report from

the contractor which she contacted-- and failed to disclose it to them. She recognized her obligation to communicate directly with the seller, but did not accord the same treatment to the buyers. It is not enough that she says that she thought she performed her duty by ordering the contractors inspection, which concluded that there was no structural damage. The Lanes were entitled to have all significant information in order to make their own decisions as to how they wanted to proceed under the sales contract. The jury should determine under the facts presented whether this breach caused damage to the Lanes.

¶24. The Court of Appeals analyzed the duty of an attorney to his client and concluded that, under the evidence, a reasonable person could conclude that there was an attorney-client relation between Rosetti and the buyers. The evidence was sufficient to allow the jury to conclude that the buyers did not receive the termite certificate at the closing conducted by Rosetti and that he did not inform them of the contractor's report. However, that court affirmed the directed verdict in his favor based on the belief that liability could not be established without expert testimony as to the standard of care imposed on a closing attorney. This brings us to the second issue presented by the petition for certiorari.

**The Standard of Care Issue**

¶25. The Lanes argued that Rosetti breached his fiduciary duty in failing to inform them of the unrepaired termite damage and in failing to give them a copy of the termite report at closing. The trial court decided and the Court of Appeals agreed that Rosetti owed a fiduciary duty to the Lanes. Rosetti in his testimony acknowledged that the Lanes had a right to expect him to enforce their rights under the contract and that he had a duty to close the sale in accordance with the contract between the buyer and the seller.

Nevertheless, the Court of Appeals held that the directed verdict in favor of Rosetti was proper because the Lanes failed to offer expert testimony to support their malpractice claim.[1]

¶26.    The Lanes argue that their claim against Rosetti was not that he breached a standard of care of minimally competent attorneys, but that his failure to disclose the unfavorable termite report was a breach of standard of conduct. As such, they assert, there was no need to present expert testimony to support the claim because there were no special skills, knowledge, experience, or the like involved. We think the Lanes are correct. The Court has recognized that there are circumstances in which a jury might "determine the issue of an attorney's negligence without the benefit of expert testimony." *Dean v. Conn*, 419 So.2d 148, 151 (Miss. 1982).

¶27.    In an action involving a legal malpractice claim where the attorney had represented both the insurer and the insured in a personal injury action arising from an automobile accident, this Court held that legal malpractice may be a violation of the standard of care of exercising the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, or the breach of a fiduciary duty. *Hartford Acc. & Indem. Co. v. Foster*, 528 So.2d 255, 285 (Miss. 1988). We stated:

> Some courts seem to distinguish a breach of the fiduciary obligations from legal malpractice. The prevailing and more reasonable view, however, is that legal malpractice encompasses any professional misconduct whether attributable to a breach of the standard of care or of the fiduciary obligations. In recognition of the dual bases of an attorney's liability, some courts have referred to the fiduciary obligations as setting forth a standard of "conduct." Thus, under the theoretical approach legal malpractice may be defined as "a breach by an attorney of either the standard of care or of the standard of conduct." Thus,

---

[1] In contrast, when deciding whether the real estate agent committed an offense, the Court of Appeals stated: "[W]e are of the opinion that sufficient evidence was presented that a question existed for the jury to decide if Owen failed to uphold her fiduciary duty owed to the Lanes." *Lane v. Oustalet*, 850 So. 2d at 152.

legal malpractice may be a violation of the standard of care of exercising the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, or the breach of a fiduciary duty. The declaration here charges a fiduciary violation as the basis for this malpractice action.

To recover under the negligence theory of legal malpractice, the client must prove the existence of an attorney-client relationship, the acts constituting negligence, that the negligence proximately caused the injury, and the fact and extent of the injury. *Hickox v. Holleman*, 502 So.2d at 634; *Hutchinson v. Smith*, 417 So.2d 926 (Miss.1982); *Thompson v. Erving's Hatcheries, Inc*., 186 So.2d 756 (Miss.1966). However, the legal malpractice alleged in this case is a violation of the standard of conduct, not breach of the standard of care. The elements of this cause of action are the same as other legal malpractice actions except, instead of proving negligence, the plaintiff must prove a violation of the attorney's fiduciary duty.

528 So. 2d at 285. Clearly established law provides that expert testimony is necessary to establish the breach of a duty of care in a claim of legal malpractice; however, when the claim is for breach of the standard of conduct, we conclude that lack of expert testimony should not preclude the issue from being heard by a jury.

¶28. Whether Rosetti breached his fiduciary duty to the Lanes is not the kind of question that necessarily confronts a jury with issues that require specialized knowledge or experience. Rosetti was aware of a material fact affecting the terms of the Lane's real estate purchase. He was aware of the importance of the noted unrepaired termite damage and demonstrated that awareness by informing Owen of the need to have a professional inspect the house. Furthermore, Rosetti had a duty to bring this fact to the attention of the Lanes and to be certain that they were aware of the termite damage to the house. The Lanes testified that they did not receive a copy of the termite report at closing, and the trial court found that Rosetti did not provide a copy to them. We find that a jury should have been allowed to make the determination on the issue of breach of the standard of conduct or breach of the fiduciary duty without an expert witness' testimony. This issue is remanded to the trial court for proceedings in accordance with this Court's decision.

## CONCLUSION

¶29.    Although dual agencies are allowed when all principals are aware of the multiple representation, they are fraught with special problems and require a heightened standard of conduct on the part of the agents in assuring that both masters are well served and that the agents' responsibilities are fully performed as to all.  Whether attorney or real estate agent, a professional assumes a heighten responsibility when assuming to act on behalf of parties who may have opposing interests. The dual agent assumes separate burdens as to each principal which must be fully fulfilled, and a principal instructing or informing his  agent cannot be relieved of his responsibilities under a contract unless the circumstances are such as to indicate that the dual agent received and handled the instruction or information as the agent for the opposing party. Often, as here, these are factual circumstances which are best left to the trier of facts.

¶30.    The standard of care and the standard of conduct are two distinguishable components of a legal malpractice claim.  Where a legal malpractice claim is based solely on a breach of a standard of conduct, as opposed to a breach of a standard of care, proof of the violation of the fiduciary duty to disclose is sufficient to create a jury question which, under facts such as these may be determined without the benefit of expert testimony.

¶31.    The judgment of the Court of Appeals as to Oustalet and Rosetti is reversed; as to Alfonso Realty, it is affirmed. We reverse the circuit court's judgment and  remand to the circuit court for a new trial consistent with this opinion as to all three defendants.

¶32.    **THE JUDGMENT OF THE COURT OF  APPEALS IS AFFIRMED AS TO ALFONSO REALTY, INC. AND REVERSED AS TO A.J.M. OUSTALET, JR. AND JERRY ROSETTI, ESQUIRE.  THE JUDGMENT OF THE CIRCUIT COURT IS REVERSED AND THIS CASE IS REMANDED FOR A NEW TRIAL.**

**SMITH, C.J. WALLER AND COBB, P.JJ., EASLEY AND CARLSON, JJ., CONCUR. DIAZ, DICKINSON AND RANDOLPH, JJ., NOT PARTICIPATING.**