GRIFFIS, P.J.,
concurring in part and dissenting in part:
¶ 34. I agree with the majority that the Department was a political subdivision subject to the MTCA. I further agree that Kelley’s claims for breach of contract and inverse condemnation fail. The majority also correctly finds that the trial court did not abuse its discretion when it stayed discovery while determining the issue of immunity.
¶35. I write separately, however, because I disagree that a genuine issue of material fact exists regarding the statute of -limitations. I agree with the trial court and am of the opinion that the statute of limitations began to run as of February 5, 2008. Accordingly, Kelley’s notice-of-claims letter, dated February 19, 2009, fell outside the one-year statute of limitations.
¶36. “All actions brought under [the MTCA] shall be commenced within one (1) year next after the date of the tortious, wrongful[,] or otherwise actionable conduct on which the liability phase of the action is based[.]” ‘Miss.Code Ann. § 11-46-il(3)(a) (Rev.2012). “[T]he statute of limitations for claims thereunder begins to run when all the elements of a tort, or cause of action, are present.” Caves v. Yarbrough, 991 So.2d 142, 147 (¶ 22) (Miss.2008).
¶ 37. Kelley claims that the statute of limitations does not begin to run until at least after February 21, 2008. Kelley bases this assertion on the fact that the Department last sent workers to the property on February 21, 2008, and that he received assurances that the Department would repair the damage to the property after this date. The record, however, indicates that the Department last sent workers for the installation on January 24, 20Q8. Further, Lambert stated in his email that the installation of the water and gas lines was corn- *1120 pleted as of his February 1,2008 visit even though the Department had failed to repair the damage caused by the installation.
¶38. The majority contends “that the Department’s failure to restore the property to its prior condition after the Department completed installation of the utility lines” .is the. gravamen of Kelley’s claims. As such, the majority contends, Kelley’s claims accrued once .the Department informed Kelley that it would not make any further repairs as of March or. April 2008. The majority’s interpretation of the basis of Kelley’s .claims relies on the proposition that Kelley’s cause of action stems from the Department’s failure to restore the land in compliance with industry standards. As the majority correctly pointed out, however, Kelley and the Department did not have a valid contract. Therefore, a claim for the Department’s failure to make repairs could not arise as a breach-of-contract claim, but would have to arise out of a negligence claim. ' Following this logic, the industry standard would then have to create a duty that the Department breached by failing to make repairs.
¶ 39. This logic is flawed, however, because industry standards do not create a duty and the failure to conform with industry standards does not create an independent basis for a negligence action. See Warren v. Pallets, Inc., 747 So.2d 875, 877-78 (¶ 18) (Miss.Ct.App.1999) (finding a logging industry standard did not create a duty from which an independent tort could arise). Therefore, Kelley’s claims necessarily arise from the damage itself as well as the negligent work of the Department. As such, the accrual of Kelley’s claims began once Kelley knew of the damage and the Department’s substandard-work.
¶ 40. Kelley stated that during the time that the Department was installing the utility lines, he was “concerned about the amount of damage that [the Department] was causing!.]” Further, Lambert’s email indicated that while the installation of the water and gas lines was complete, the property suffered from extensive damage as of February 1, 2008. Though Kelley denies he had personal knowledge of the email when it was originally sent, New-comb, Kelley’s engineer, received notice of the email on February 5, 2008, which imputes notice to Kelley. See Lane v. Oustalet, 873 So.2d 92, 95-96 (¶ 15) (Miss.2004) (“The law of agency generally imputes knowledge and information received by an agent in conducting the business of a principal to the principal, even where that knowledge or information is not communicated by the agent to the principal.”) Therefore, Kelley’s observation coupled with Lambert’s email indicates Kelley knew of the damage and the Department’s negligent work as of February 5, 2008, or before.
¶ 41. The majority contends this analysis goes “beyond the statute of limitations issue properly before us” and passes judgment on the merits of Kelley’s claims. This contention is incorrect. This analysis only goes into the determination of the basis of Kelley’s claims in order to decide when the claims properly accrued for statute-of-limitations purposes, not whether Kelley’s claims are meritorious or not. I agree with the majority that “the Department had a duty to perform its work in a non-negligent fashion.” But the Department’s failure or compliance with that duty was apparent as of the February 5, 2008 email that detailed the problems with the work site. This determination does not reject Kelley’s negligence claims, as the majority argues, but merely establishes the earliest known point of the Department’s actions that Kelley complains of.
■ ¶ 42. For these reasons, I agree with the trial court and find that Kelley’s claims accrued and the statute of limitations be *1121 gan to run as of February 5, 2008. Therefore, Kelley’s claims are barred.
BARNES AND CARLTON, JJ., JOIN THIS OPINION.