BRIDGE C.A.T. SCAN ASSOCIATES
and Harbor C.A.T. Scan Associates,
P.C., Plaintiffs,

v.

OHIO–NUCLEAR INC. d/b/a Technicare
Corporation and Johnson &
Johnson, Inc., Defendants.

TECHNICARE CORPORATION,
Third-Party Plaintiff,

v.

John E. MURPHY, Sigmund Weiss, Harold Peller, Paul Slotwiner, Morris Goldfarb, Aaron Goldfarb, Zurich Gelender, John R. Jakobson, Peter Jakobson, Bernard Ellman, Daniel Brodsky, Nathan C. Brodsky and Lawrence Helfant, Third-Party Defendants.

No. 84 Civ. 0539 (EW).

United States District Court,
S.D. New York.

May 14, 1985.

Patterson, Belknap, Webb & Tyler, New York City, for defendants and third-party plaintiff; David F. Dobbins, Esther Koslow, Emily R. Remes, Daniel A. Nardello, New York City, of counsel.

Hurley, Kearney & Lane, Brooklyn, N.Y., for third-party defendant, John E. Murphy; Kevin M. Kearney, Brooklyn, N.Y., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Third party defendant John E. Murphy ("Murphy") moves, pursuant to Rule 12(b)(6) Fed.R.Civ.P., to dismiss the claims of Technicare Corporation ("Technicare") or, in the alternative, pursuant to Rule 56, for summary judgment. The claims against Murphy are the only ones remaining in this action formerly replete with claims and counterclaims by and against numerous parties. Technicare has settled its differences with all other parties to this lawsuit. It opposes Murphy's motion for dismissal or summary judgment on the grounds noted hereafter.

## BACKGROUND

Technicare is a manufacturer and distributor of medical and diagnostic devices. It seeks recovery against Murphy for: trade libel, intentional interference with business relations and contract, prima facie tort, and civil violations of RICO. Murphy is a former Technicare employee who, prior to his discharge, was responsible for arranging financing for prospective Technicare customers. In essence, Murphy is alleged to have conspired with the other parties to this lawsuit in a campaign to "smear" Technicare's reputation and that of its products by disseminating false statements to the public about Technicare's version of a sophisticated item of medical diagnostic equipment known as a C.A.T. Scanner.

A proper understanding of Technicare's claims against Murphy requires they be placed in context, with a brief history of the litigation between Technicare and one of the original plaintiffs in this action, Bridge C.A.T. Scan Associates ("Bridge"). In essence, Technicare's present claims are based upon a prior lawsuit brought by Bridge and a series of alleged threats and related conduct which led thereto.

It began with a simple contractual dispute. In October 1980, Bridge contracted to purchase a Technicare Delta Scan 2020 which, like other C.A.T. Scanners, produces an image of internal body organs without invading the body. Bridge, a limited partnership of nonphysicians, purchased the Delta Scan 2020 as a tax shelter and leased it for operation to Harbor C.A.T. Scan Associates, P.C. ("Harbor"). Although Bridge accepted the machine on delivery and Harbor put it to use, Bridge never paid for the Delta Scan 2020. Instead, it complained to Technicare that the machine was defective, caused distorted images, and was not operational for long periods of time ("downtime") and that its X-ray tubes burned out prematurely.

After various modifications of the initial contract were negotiated, the parties' dispute reached its peak in the summer of 1982. According to Technicare, Bridge's management consultant, Harold Peller ("Peller"), and its general partner, Sigmund Weiss ("Weiss"), made oral threats to Technicare's Vice-President for Sales on at least three occasions. The substance of these purported threats was that unless Technicare agreed to resolve its dispute with Bridge, Bridge would launch a "public relations campaign" against Technicare,

utilizing the services of an advertising agency, purchasing advertising space in *The Wall Street Journal* and other trade publications, and taking whatever steps were necessary to publicize the alleged shortcomings of Technicare's equipment and service.

On October 12, 1982, Weiss addressed a letter to the Chairman of the Board of Technicare's parent company, Johnson & Johnson ("J & J"), allegedly repeating and amplifying the prior oral threats ("October 12th letter"). In essence, the letter stated that if the contractual dispute was not resolved, Bridge was prepared to proceed "legally, publicly, and otherwise" in exposing the widespread threat to patient safety caused by Technicare's C.A.T. Scanners. Claiming that Bridge did not seek to expose these difficulties to the general public and was "only interested in resolving [its] own problem with J & J and minimizing [its] losses," the letter continues: "as we have stated to Technicare management, if we must do battle we will proceed in a grander scale than Technicare can envision.... We will not stop with public disclosure of our findings, but will institute a class action suite [sic] forthwith."

Consistent with its promise, Bridge commenced a class action in the Eastern District of New York on March 1, 1983. The complaint alleged various defects in Technicare's Delta Scan 2020 machines and sought recovery on several different legal bases, including breach of contract, breach of warranty, and negligent design. On March 21st, Bridge filed an amended complaint asserting similar claims with respect to the Delta Scan 2060. On that day, Bridge's counsel sent a letter to Technicare customers informing them of the pending suit, seeking information as to their difficulties with their machines, and holding out the possibility of the recovery of "substantial damages" to purchasers of a C.A.T.

Scanner "with inherent design ... defects."

At or about the time the original and amended class action complaints were filed, Bridge's counsel allegedly disseminated them to newspaper reporters. Articles summarizing the complaint's allegations appeared in the *Wall Street Journal* and the *Columbus Post Dispatch*, and in June of 1983, a *New York Times* article discussed the lawsuit in connection with an FDA investigation of Technicare's C.A.T. Scanners.

Attached as Exhibit A to the amended complaint was a list of Technicare purchasers and pricing information ("Customer and Pricing List"). Based upon a claim that the Customer and Pricing List incorporated trade secrets and confidential information, Technicare instituted a separate action [1] in the Eastern District ("the trade secret action") naming not only Bridge and associated individuals but also the movant here, Murphy. Technicare alleged that Murphy, a former Technicare employee, had stolen the pricing and customer list and given it to Bridge and its agents for the purpose of assisting them in injuring Technicare's business and reputation. That action was ultimately dismissed with prejudice upon consent of the defendants, including Murphy, to an injunction preventing dissemination of the information contained in Exhibit A to the amended class action complaint. A consent judgment was entered on January 19, 1984.

After voluntarily dismissing their class action complaint filed in the Eastern District, Bridge and Harbor instituted this action, asserting once more claims for breach of contract, defective manufacture and design, and fraud, but upon an individual rather than class basis. In response, Technicare asserted counterclaims against the Bridge and Harbor partnerships and third

---

**1.** Originally, Technicare moved, within the class action suit itself, for a protective order enjoining dissemination of the Customer and Pricing List. The order was granted, but reversed on appeal. *Bridge C.A.T. Scan Associates v. Technicare Corp.*, 710 F.2d 940 (2d Cir.1983). Thereafter, and pursuant to the opinion of our Court of Appeals, Technicare instituted a separate action. Judge Bramwell again granted a preliminary injunction which was affirmed by our Court of Appeals in an unreported opinion.

party claims against Bridge's limited and general partners, Harbor's President, Bridge's management consultant, and Murphy (hereinafter the "Bridge defendants"). These Technicare counterclaims and third party claims are the ones at issue on this motion. As noted above, Technicare seeks recovery for trade libel, intentional interference with business relations and/or contract, prima facie tort, and civil violations of RICO.

## DISCUSSION

Murphy's principal argument upon this motion is that Technicare "merely" alleges he misappropriated trade secrets. He contends that such an allegation is insufficient to warrant recovery under any of Technicare's asserted tort or statutory causes of action, and in any event, any claim based thereon has already been litigated in the prior trade secrets action. Accordingly, Murphy moves to dismiss for failure to state a claim upon which relief may be granted, or for summary judgment on grounds of res judicata.

■ Murphy is correct that the only conduct specifically attributed to him in the complaint is the misappropriation of trade secrets. However, this neither entitles him to a dismissal, nor bars Technicare's claims as a matter of res judicata. Technicare alleges not only that Murphy stole its trade secrets, but also that he was a member of a conspiracy, and acted in concert with the other Bridge defendants, in an attempt to smear the reputation of Technicare and its widely distributed products.[2] The purported conspiracy is based on the dissemination of allegedly libelous statements to the public and Technicare's customers. That Murphy's role in this conspiracy may have been

limited or slight is of no consequence. A conspirator is liable for the acts of other members of the claimed conspiracy as if they were his own, whether he plays a minor or major role in the common scheme.[3]

■ Technicare has raised an issue of fact as to Murphy's participation in the alleged scheme to "smear" its products' reputation. Murphy's own deposition testimony indicates that, while at Technicare, he was involved in arranging financing for the Bridge/Harbor project and that, after leaving, he had various meetings with the principals of Bridge and Harbor to discuss possible "business ventures," and also had meetings with Bridge's counsel where litigation with Technicare was discussed. Furthermore, Technicare has submitted the deposition of Bridge's general partner, Sigmund Weiss, who testified that it was Murphy who drafted the October 12th letter threatening that Bridge would proceed "legally, publicly, and otherwise," and that he did so at the request of Harbor's President or Bridge's management consultant. Murphy has submitted no affidavit denying the alleged disloyal conduct.

Recasting his argument, Murphy contends that, in any event, this action is barred by the doctrine of res judicata since Technicare has previously litigated his claimed misappropriation of trade secrets. However, this contention ignores the scope and nature of Technicare's claims.

■ "[A] valid, final judgment on the merits is a bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand,"[4] which either was or could have

---

**2.** Second Amended Third Party Complaint ¶ 80; *see also id.* at 8–9 (including Murphy among the "Bridge defendants").

**3.** *See, e.g., United States v. Murray,* 618 F.2d 892, 902 (2d Cir.1980); *see also Rooney Pace, Inc. v. Reid,* 605 F.Supp. 158, 161 (S.D.N.Y., 1985); *Foreman v. Ambach,* 525 F.Supp. 722, 730 (S.D. N.Y.1981) ("A conspirator is a conspirator whether he plays a major role or a minor role in the illicit activity").

**4.** *N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983) (quoting 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.411[2] at 1281 n. 1 (2d ed. 1982) ).

It is well-established that a consent judgment entered "with prejudice" operates as a final judgment on the merits. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955).

been litigated in the prior action.[5] Under New York law, whether an action asserts the "same" claim or demand depends upon whether "the essential facts and issues" in the second action were present in the first; whether the "same evidence is necessary to maintain the second cause of action" as required in the first; and whether a different judgment in the second action would "impair or destroy rights or interests established by the judgment entered in the first." [6]

■ The "crucial" factor in determining whether claims are "the same" is the factual predicate underlying them.[7] The facts underlying this action are substantially different from those underlying the prior trade secrets action. The trade secrets action involved a single, discrete factual issue: the dissemination of customer and pricing information. Here, Technicare's allegations are based on a course of conduct allegedly intended to "smear" its public reputation and that of its products. This course of conduct includes the October 12th letter, the class action complaint, the delivery of the complaint to the press, and the subsequent letter sent by Bridge's counsel to Technicare's customers. That some of these facts were also alleged in Technicare's prior trade secrets appropriation complaint does not render that prior claim "the same" as the instant claim charging

trade libel and intentional interference with contractual relations.[8]

Just as the factual predicates differ, the evidence required to prove the present claims differs. A trade secrets claim requires proof of the confidential nature of the information, how the information was obtained, and its dissemination.[9] Technicare's present claims for trade libel, intentional interference with contract, prima facie tort, and civil violations of RICO are not simply alternative theories for recovery proven by the same evidence on which a trade secrets claim could be based. These claims stand or fall on the Bridge defendants' motives and justification for the prior class action suit, the delivery of the complaint to the press, and the dissemination of various other communications concerning the suit [10]—issues not requiring proof of, and basically irrelevant to, the confidentiality of the Customer and Pricing List or how Murphy allegedly obtained it from Technicare.

Because of the differing factual predicates and evidence required to prove its present claims, no judgment obtained by Technicare would impair or destroy any of Murphy's interests under the prior consent decree. Accordingly, the Court finds that res judicata does not bar Technicare from asserting its present claims, and that Murphy is not entitled to summary disposition simply because the complaint specifically

5. That the new causes of action might have been *joined* in the prior action is not determinative. *See Board of Educ. v. Hufstedler,* 641 F.2d 68, 71 (2d Cir.1981). However, res judicata does bar the assertion of "new ground[s] for recovery," *see Brown v. Felsen,* 442 U.S. 127, 133, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767 (1979), for "[n]ew legal theories do not amount to a new cause of action." *In re Teltronics Services, Inc.,* 762 F.2d 185, 193 (2d Cir.1985).

6. *Board of Educ. v. Hufstedler,* 641 F.2d 68, 71 (2d Cir.1981) (quoting *Herendeen v. Champion Int'l Corp.,* 525 F.2d 130, 133–34 (2d Cir.1975) ).

7. *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

8. *N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1259–60 (2d Cir.1983) ("But the circum-

stance that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim that was litigated in the first, and that litigation of the second is therefore precluded by the judgment in the first.").

9. *See Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 475–76, 94 S.Ct. 1879, 1883–84, 40 L.Ed.2d 315 (1974); *Bridge C.A.T. Scan Assoc. v. Technicare Corp.,* 710 F.2d 940, 946–47 (2d Cir.1983); *Heyman v. Ar. Winarick, Inc.,* 207 F.Supp. 78, 81–84 (S.D.N.Y.1962), *aff'd,* 325 F.2d 584 (2d Cir.1963); Restatement of Torts § 757(b) (1939); 60 N.Y.Jur. § 109 (1968).

10. *See infra* text accompanying notes 17–19.

attributes a limited amount of conduct to him.

■ While this disposes of Murphy's own arguments upon this motion, further consideration of the viability of Technicare's claims is necessary. In his moving papers, Murphy has incorporated the arguments of other parties to the litigation with whom Technicare has since compromised its claims. The liability of Murphy, who allegedly conspired with others, depends, in addition to his own actions, upon the statements and conduct directly attributed to those other parties. If, as Murphy contends, Technicare's allegations do not state a claim in tort based on their actions, then the conspiracy allegations against him must fall as well, for conspiracy itself is not a tort but rather a rule of responsibility for the tortious actions of others.[11] Accordingly, the Court addresses the principal contentions previously advanced by the other Bridge defendants, as adopted by Murphy in support of his own motion.

■ However, before addressing those claims, the Court notes that any RICO [12] cause of action against Murphy must be dismissed. Technicare has neither alleged that Murphy or any other Bridge defendant has been convicted of a predicate act, nor that it has suffered a distinct racketeering injury, both of which allegations are required by the decision of our Court of Appeals in *Sedima, S.P.R.L. v. Imrex.*[13]

### Trade Libel

Technicare's principal claim is that the Bridge defendants conspiratorially and maliciously disseminated libelous statements to the public and its customers about its C.A.T. Scanners. It charges Murphy and the others with common law disparagement or trade libel based on statements made (1) in the original and amended class action complaints and (2) in a letter to Technicare customers sent by Bridge's counsel after the initiation of the class action.[14] Each set of statements will be considered separately.

### (1) Statements Made in the Amended and Original Complaints.

■ The allegedly libelous statements contained in the complaints charge that certain C.A.T. Scanners and supplementary equipment manufactured by Technicare are unreliable and pose a health risk to patients. The specific statements relied upon are allegations that the Delta Scan 2020 and 2060 are "defective," do "not operate properly and efficiently with reliability," and as a result, patients "received a lesser overall standard of medical care than they would have otherwise received, thereby significantly endangering the health, safety and welfare of a nationally significant portion of the American public." Technicare charges that these statements were maliciously made and the complaints delivered to the press for the purpose of "smearing" its products' reputation.[15]

---

**11.** A conspiracy allegation broadens the reach of traditional torts by "connect[ing] a defendant with the acts and declarations of his co-conspirators, where otherwise he could not have been implicated." *Glaser v. Kaplan,* 5 A.D.2d 829, 830, 170 N.Y.S.2d 522, 525 (2d Dep't 1958). Liability of a civil conspirator depends upon whether the overt acts alleged are actionable under traditional tort theories of recovery, or whether a lawful end has been effected in an unlawful manner. *See Arlinghaus v. Ritenour,* 622 F.2d 629, 639 (2d Cir.), *cert. denied,* 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980); *Danahy v. Meese,* 84 A.D.2d 670, 672, 446 N.Y.S.2d 611, 614 (4th Dep't 1981).

**12.** 18 U.S.C. § 1964(c) (1982).

**13.** 741 F.2d 482, 496 (2d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985).

**14.** Technicare makes no claim that the October 12th letter in and of itself gives rise to a claim of trade libel and does not dispute that the statute of limitations would bar any such claim. *See* N.Y.Civ.Prac. § 215(3) (McKinney 1972).

**15.** While Technicare refers to its factual allegations as constituting a claim for "common law disparagement" or "trade libel," it also repeatedly alleges that Bridge's purportedly false statements damaged Technicare's reputation, as opposed to the reputation of its products. An action for trade libel only protects Technicare's interest in the vendibility of its products, not its general reputation. Whatever differences, if any, exist as to the elements required to recover for injuries to those different interests, they are not relevant here. Murphy's claims of privilege are equally applicable to both; and Technicare has not disputed, for the purposes of this motion, the necessary state of mind it must allege,

Murphy urges that the statements themselves cannot as a matter of law give rise to a claim for trade libel because they are absolutely protected by the common law privilege afforded statements made during the course of judicial proceedings; and that the delivery of the statements to the press is equally protected by the statutory privilege afforded by Section 74 of New York's Civil Rights Law for fair and true reports of judicial proceedings.[16]

Statements made in a pleading and fair and true reports of such pleadings are absolutely privileged.[17] However, Technicare claims that the statements were made and delivered to the press by Bridge for the purpose of publicly maligning its products. It has alleged that the complaint was unfounded, instituted with malice, and for the purpose of publicly disseminating libelous statements about its C.A.T. Scanners. In other words, it contends that the judicial process was subverted by the Bridge defendants for the purpose of disseminating false statements. Under New York law, such a claim is barred neither by the absolute privilege afforded statements made in pleadings, nor by the statutory privilege afforded fair and true reports of such statements.

In *Williams v. Williams*,[18] the New York Court of Appeals faced allegations similar to Technicare's and declined to dismiss the complaint on grounds of privilege. In *Williams*, as here, the plaintiff claimed that the defendant had maliciously instituted a prior suit for the purpose of disseminating false statements. Plaintiff had been a co-principal with his brother in the

Universal Oven Company, Inc. The brother caused the company to institute an action alleging that plaintiff had conspired with others to misappropriate the company's trade secrets and assets, and then, circulated copies of the summons and complaint to members of the trade. Defendant moved to dismiss on grounds that the statements made in the prior complaint and disseminated to trade members were absolutely privileged. The Court of Appeals upheld the denial of the motion, reasoning that the malicious institution of a judicial proceeding alleging false and defamatory charges and subsequent circulation of a press release or other communication based thereon was not privileged.[19]

In *Williams*, the Court specifically addressed the question whether the *statutory* privilege embodied in Section 74 of New York Civil Rights Law precludes a claim such as Technicare's.[20] Nevertheless, its analysis renders the *common law* privilege afforded statements made during the course of judicial proceedings equally inapplicable. In considering whether Section 74 barred plaintiff's claims, the Court implicitly recognized that the defendant's delivery of a copy of the summons and complaint to members of the trade must be considered separately and apart from the complaint filed in the action.[21] Section 74 is only applicable to fair and true *reports* of judicial proceedings. If the statutory privilege was to be applicable at all in *Williams*, it was because the defendant had, in effect, "reported" the statements

---

or provide facts in support of, to survive Murphy's motion. *See infra* text accompanying note 37–38.

**16.** Section 74 provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding...." N.Y.Civ.Rights § 74 (McKinney 1976).

**17.** *See, e.g., The Savage Is Loose Co. v. United Artists Theatre Circuit,* 413 F.Supp. 555 (S.D.N.Y.1976); *Feldman v. Bernham,* 6 A.D.2d 498, 500, 179 N.Y.S.2d 881, 883 (1st Dep't 1958) (per curiam), *aff'd,* 7 N.Y.2d 772, 163 N.E.2d 145, 194

N.Y.S.2d 41 (1959) (mem.); *see also Seltzer v. Fields,* 20 A.D.2d 60, 244 N.Y.S.2d 792 (1st Dep't 1963).

**18.** 23 N.Y.2d 592, 246 N.E.2d 333, 298 N.Y.S.2d 473 (1969).

**19.** *Id.* at 595, 599, 246 N.E.2d at 334–35, 337, 298 N.Y.S.2d at 475–76, 479.

**20.** *See id.* at 596–97, 246 N.E.2d at 335–36, 298 N.Y.S.2d at 477.

**21.** *See id.* at 597, 246 N.E.2d at 336, 298 N.Y.S.2d at 477.

made in the complaint by delivering a copy to members of the trade.

The delivery of a copy or report of a complaint to the press is not a statement made during the course of judicial proceedings and therefore is not protected by the common law privilege afforded such statements.[22] The common law privilege offers a shield to one who publishes libelous statements in a pleading or in open court for the purpose of protecting litigants' zeal in furthering their causes.[23] Parties' interest in furthering their causes may be protected without clothing them with an absolute right to publicly distribute whatever malicious matter they may author.[24] Delivery of a complaint or summary of a complaint to the press is neither essential nor relevant to the judicial proceedings themselves. It in no way aids a party in furthering his or her cause before a judicial tribunal and, hence, must fall outside the privilege afforded statements made during the course of judicial proceedings.[25] Once filed, the complaint is a public document with access to it available to the public and the news media. But for the plaintiff, purposely and maliciously, to stimulate press coverage and wide publicity of a complaint with its allegedly false and malicious statements is beyond the pale of protection. Since the

New York courts have found Section 74 inapplicable to allegations such as Technicare's, the Court finds that neither the common law privilege afforded statements made during the course of judicial proceedings, nor the statutory privilege, bars its claims as a matter of law.

■ Murphy contends that, even if Technicare has alleged facts which, if proven, would fall within the *Williams* exception to Section 74, he is still entitled to summary judgment because Technicare has failed to provide any facts to support its claims (1) that Bridge purposefully caused the complaint to be delivered to the press or (2) that the prior class action was brought with malice. To the contrary, the Court finds that Technicare has raised issues of fact both as to Bridge's purposeful dissemination of the complaint as well as its malice in instituting the prior class action. Accordingly, whether the statements upon which Technicare rely are privileged or whether they fall within the *Williams* exception may not be resolved upon a motion for summary judgment.

Bridge does not deny that its counsel disseminated the complaint to the press. Rather, it claims its counsel only did so upon reporters' requests.[26] However, neither Bridge nor Murphy have provided any

---

22. *See Seltzer v. Fields,* 20 A.D.2d 60, 63, 244 N.Y.S.2d 792, 796 (1st Dep't 1963) ("communications unconnected with the judicial proceeding are not cloaked with the absolute privilege"); *see also Schulman v. Anderson Russell Kill & Olick,* 117 Misc.2d 162, 458 N.Y.S.2d 448 (Sup. Ct.N.Y.Co.1982).

23. [T]he law offers a shield to the one who in legal proceedings publishes a libel, not because it wishes to encourage libel, but because if men were afraid to set forth their rights in legal proceedings for fear of liability to libel suits, greater harm would result, in the suppression of the truth.
*Williams,* 23 N.Y.2d at 600, 246 N.E.2d at 338, 298 N.Y.S.2d at 480 (Burke, J., concurring) (quoting 1 Seelman, The Law of Libel and Slander in the State of New York ¶ 191 (1933 ed.)) (emphasis deleted); *see Park Knoll Assoc. v. Schmidt,* 59 N.Y.2d 205, 209, 451 N.E.2d 182, 184, 464 N.Y.S.2d 424, 426 (1983) (in judicial proceedings, an absolute privilege is intended to promote the administration of justice and only incidentally protect the participants).

24. *Williams,* 23 N.Y.2d at 603, 246 N.E.2d at 340, 298 N.Y.S.2d at 482 (Burke, J., concurring).

25. *See Schulman v. Anderson Russell Kill & Olick,* 117 Misc.2d 162, 458 N.Y.S.2d 448 (Sup. Ct.N.Y.Co.1982). The New York Courts have resisted the application of an absolute privilege where the purpose of that privilege would not be served. *See Park Knoll Assoc. v. Schmidt,* 59 N.Y.2d 205, 210, 451 N.E.2d 182, 185, 464 N.Y.S.2d 424, 427 (1983); *Stukuls v. State of New York,* 42 N.Y.2d 272, 277, 366 N.E.2d 829, 832, 397 N.Y.S.2d 740, 743 (1977).

26. The *Williams* exception may only be invoked where the defendant has purposefully initiated widespread publication of the statements. *See The Savage Is Loose, Co. v. United Artists Theatre Circuit, Inc.,* 413 F.Supp. 555, 561 (S.D.N.Y. 1976); *Weissman v. Mogol,* 118 Misc.2d 911, 919, 462 N.Y.S.2d 383, 388 (Sup.Ct.Nassau Co. 1983).

affidavits to support such a claim. The statements of counsel in a brief are insufficient grounds on which to grant summary judgment. Moreover, Technicare has provided deposition testimony which would support an inference that Bridge's counsel took an active role in assuring that Bridge's claims about the C.A.T. Scanner received press coverage. Dr. David Martinez, a dissatisfied C.A.T. Scan owner, testified that one of Bridge's counsel called him sometime in late January or February 1983 and asked permission to give his name to a reporter. Later, after the initiation of the litigation in March of 1983, articles appeared in the *New York Times* concerning Technicare's C.A.T. Scanners under the nephew's name.

Technicare has also raised an issue of fact as to whether the prior class action complaint was instituted with malice and solely for the purpose of injuring its products' reputation. The October 12th letter, with its promise of public relations battles and its equation of class action suits with advertising campaigns, raises substantial questions as to the Bridge defendants' motives in instigating the prior litigation.[27] Moreover, while the Bridge defendants claim there was a substantial basis for the complaint, Technicare has produced affidavits raising questions whether Bridge and Harbor did in fact experience the mechanical difficulties with the C.A.T. Scanner on which the class action complaint was based. These affidavits, submitted by Harbor personnel who were intimately involved with the daily performance of the machine, attested that the C.A.T. Scanner did not experience excessive downtime, that Techni-

care's service personnel were competent, that patient safety was not threatened by excessive downtime, and that X-ray tube burnout was no more rapid than expected given the constant use of the machine. For example, Dr. Sanford P. Antin, Harbor's Chief Radiologist, states that "[t]here is no basis for saying that our patient population was inadequately diagnosed or unduly inconvenienced because of the Delta Scan 2020 or the Technicare personnel who maintained it" and the "quality of image resolution, and the equipment quality, was well above average." [28]

If Harbor's own employees swear that the machine did not experience the type of difficulties alleged in the complaint, a substantial question is raised whether the complaint was instituted without regard for the truth of its allegations and for the purpose of disparaging Technicare's products. Accordingly, the Court finds that Murphy is not entitled to summary judgment on grounds that the statements made in the complaint and delivered to the press are absolutely privileged. Whether these statements are privileged or not depends upon the resolution of factual issues upon a trial.

(2) Statements Made in the Letter Sent to Technicare Customers.

Technicare claims that shortly after the class action suit was instituted, the Bridge defendants caused a letter to be sent by their counsel to Technicare customers which was used to "further disseminate the false accusations embodied in the class action complaint." In essence, this March 21, 1983 letter informs Technicare customers of the pendency of a class action suit, sum-

---

**27.** In the prior trade secrets action, Judge Bramwell found that "the menacing tone of the correspondence exchanged between the parties before inception of the case manifests in the clearest manner, defendants' ill-will toward plaintiff," and that "John Murphy via the duplicitous and vindictive conduct evidenced thus far, has, in this Court's opinion, undertaken a calculated and ill-disguised effort to damage Technicare's relationship with its customers." Similarly, in recommending that Judge Bramwell deny class certification, Magistrate Scheindlin found that Bridge "has attempted to use the threat of a class action to enhance its bargaining power in

its own dispute with [Technicare]." Bridge Defendants' Exhibits E at 3, F at 37.

**28.** Affidavit of Dr. Sanford P. Antin, ¶¶ 7, 13; *but see* Amended Class Action Complaint ¶ 24. *Compare* Affidavit of Dr. Morton A. Jaffe (part-time radiologist at Harbor) ¶¶ 8, 9; Affidavit of Peter Gibbons (Harbor x-ray technician) ¶¶ 6, 7, 9, 11; Affidavit of Dr. Sanford P. Antin, ¶¶ 8, 10, 12, 13, *with* Amended Class Action Complaint ¶¶ 18–20, 24, 28, 31–33, 35–37, 43, 46, 60, 64, 67, 77.

marizes Bridge's claims as to the inefficiency and unreliability of Technicare's C.A.T. Scanners, notes the "opportunity" for customers "of recovering substantial damages as a result of receiving a Deltascan machine with inherent design and manufacturing defects," and requests information concerning possible difficulties with C.A.T. Scanners to "aid in the resolution of a nationally important issue concerning the quality of health care."

■ Murphy urges dismissal of Technicare's claims with respect to the letter on several grounds: that the statements were made by Bridge's counsel and cannot be imputed to Murphy or others; that the statements are protected as fair and true reports of judicial proceedings; and that the statements are independently protected because they were made during the course of judicial proceedings. That Bridge's counsel authored the statements contained in the letter does not shield Murphy from liability. If found to be a member of the alleged conspiracy to "smear" the reputation of Technicare's products, Murphy may be held liable for the acts and statements of his co-conspirators. In turn, Bridge, an alleged co-conspirator, may be held liable for the acts of its counsel. A client and his attorney stand in the relationship of principal and agent.[29] As such, a client may be responsible for statements made for the purpose of aiding, and within the scope of, his legal representation.[30]

■ Murphy's reliance on Civil Rights Law Section 74 is equally unavailing. Technicare has alleged that the letter was another means by which the Bridge defendants disseminated the libelous statements contained in the complaint. Their allegations fall within the *Williams* exception to the protection afforded by Section 74. While in *Williams* the alleged "fair and true report" was a copy of the complaint itself and, here, Technicare relies upon a letter summarizing the complaint, *Williams* remains applicable. The Court of Appeals expressly found that the Legislature, in enacting Section 74, did not intend to allow a person to maliciously institute a judicial proceeding "and to then circulate a *press release or other communication* based thereon and escape liability by invoking the statute."[31] Technicare has not only made allegations sufficient to rely upon *Williams* but, as discussed above, has also raised an issue of fact as to its applicability which precludes summary judgment.

However, Murphy argues that, apart from *Williams*, the statements contained in the letter are independently protected by the common law privilege afforded statements made during the course of judicial proceedings because, unlike a copy of a complaint delivered to the press, the letter was intended to obtain information to assist in the class action litigation. However, upon the present state of the record, it appears that the letter was not made during the course of judicial proceedings and therefore the common law privilege is inapplicable.

While courts have extended the privilege afforded statements made during the course of judicial proceedings to statements made outside the confines of filed documents or in open court—even to the protection of letters written to prospective

**29.** *See Farr v. Newman,* 14 N.Y.2d 183, 199 N.E.2d 369, 250 N.Y.S.2d 272 (1964); *Poucher v. Blanchard,* 86 N.Y. 256, 260 (1881); *Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 211, 411 N.Y.S.2d 66, 69 (4th Dep't 1978); *Racoosin v. LeSchack & Grodensky, P.C.,* 103 Misc.2d 629, 634, 426 N.Y.S.2d 707, 711 (Sup.Ct.N.Y.Co.1980).

**30.** *See Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 411 N.Y.S.2d 66, 69 (4th Dep't 1978); *Montagnino v. Brojer,* 29 Misc.2d 651, 653, 214 N.Y.S.2d 208, 211 (Muni.Ct.N.Y.Bronx Co.1960); Restatement (Second) of Agency §§ 247, 254 (1958); *see also American Soc'y of Mechanical Engineers Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 566, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982); *Farr v. Newman,* 14 N.Y.2d 183, 199 N.E.2d 369, 250 N.Y.S.2d 272 (1964) (imputing knowledge); Restatement (Second) of Agency § 253 (1958).

**31.** *Williams,* 23 N.Y.2d at 599, 246 N.E.2d at 337, 298 N.Y.S.2d at 479.

**1198**

witnesses [32]—the nature of the communication here does not justify absolute protection. The letter sent was a preliminary inquiry to persons "not yet known to possess information germane to litigation." [33] As the letter itself states, some of its addressees may not have had any information concerning the risk of Technicare's C.A.T. Scanners to patient safety. Bridge and its counsel had no way of knowing which of the entire group had any information concerning the litigation. While the letters were addressed to individuals who would perhaps have become parties to the litigation as class members, at the time they were sent no class had been certified. The recipients' relationship to the litigation was hypothetical at best.

At least one New York court faced with a similar communication to prospective witnesses "not yet known to possess information germane to litigation" has found that the purposes of the common law privilege would not be served by insulating the speaker from liability. In *Schulman v. Anderson Russell Kill & Olick,* [34] the Court distinguished such statements from communications directed to specific witnesses or parties undertaken during discovery or in preparation for trial, where absolute protection is required to insure litigants' freedom to urge their causes. These statements are informal inquiries directed to those with potential information. The chilling effect of imposing liability for such statements does not clearly outweigh an individual's interest in protecting his reputation or a corporation's interest in protecting the reputation of its products. [35]

The question is not whether the statements deserve any protection at all, but whether they deserve absolute protection. As the *Schulman* court found, although these statements are not completely irrelevant to the judicial process, the need to protect litigants' zeal does not justify their absolute protection. [36] The Court need not decide to adopt, as *Schulman* did, a qualified privilege for such statements. It is enough to find that, upon the present record, the absolute privilege accorded statements made during the course of judicial proceedings does not bar Technicare's claims.

Finally, Murphy argues he is entitled to summary judgment, both with respect to statements made in the complaint and delivered to the press as well as statements summarizing the complaint and contained in the letter to potential class members, because Technicare has failed to raise an issue of material fact as to whether the statements were made with "actual malice," as distinguished from the malice necessary to invoke the *Williams* exception. Murphy contends that Technicare is a "public figure" and, therefore, under the Supreme Court's decisions construing the limits placed on libel actions by the First Amendment, must show by clear and convincing evidence that the statements were made with reckless disregard of their truth or falsity. [37] Technicare does not dispute that it is a "public figure" but, for purposes of defeating Murphy's motion for summary judgment on its trade libel claim, claims it has introduced facts from which the existence of actual malice may reasonably be inferred.

Assuming, without deciding, [38] that "actual malice" is required, the Court finds Technicare has raised an issue of fact

---

**32.** *See, e.g., Youmans v. Smith,* 153 N.Y. 214, 47 N.E. 265 (1897) (statements made in letter to subpoenaed witness).

**33.** *Schulman v. Anderson Russell Kill & Olick,* 117 Misc.2d 162, 168, 458 N.Y.S.2d 448, 453 (Sup.Ct.N.Y.Co.1982).

**34.** 117 Misc.2d 162, 458 N.Y.S.2d 448 (Sup.Ct.N.Y.Co.1982).

**35.** *Id.* at 168, 458 N.Y.S.2d at 453.

**36.** *Id.*

**37.** *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

**38.** Because an issue of fact would necessarily be raised as to any lesser standard if an issue exists as to "actual malice," the Court does not decide whether or not Technicare is a public figure.

that precludes summary judgment. To withstand a summary judgment motion where actual malice is at issue requires a showing of facts from which it may reasonably be inferred that the party making the statements was subjectively aware of the probable falsity or had serious doubts about the truth of its statements.[39] The October 12th letter, the oral threats, and the affidavits of Harbor personnel offered by Technicare are facts from which a reasonable jury could infer that the Bridge defendants made their allegations that the Delta Scan 2020 was unreliable and defective with actual malice. If in fact Harbor's 2020 C.A.T. Scanner was operating properly and performing well as the Harbor affidavits imply, Harbor and Bridge or their principals could have had serious doubts as to the truth of statements that the machine was defective. It is true that the class action complaint was supported by affidavits of persons familiar with the technical aspects of C.A.T. Scanners which support Bridge's claim that the machine had "design limitations." However, that fact alone does not conclusively establish the absence of any material issue of fact as to the Bridge defendants' actual malice. Technicare has offered sworn statements from which actual malice may be inferred. Based upon the entire record presented on this motion, the Court finds that "a reasonable jury could find malice with convincing clarity."[40] Accordingly, Murphy's motion with respect to Technicare's trade libel claims is denied.

### Intentional Interference With Contractual Relations

 Murphy urges dismissal of Technicare's claim for intentional interference with contract and/or prospective business relations on grounds it has failed to allege that he or the Bridge defendants had knowledge of the contracts or business relations with which they allegedly interfered.[41] Technicare does not quarrel with this basic legal proposition, but rather relies on allegations in the complaint and documents submitted on this motion from which it claims knowledge may be inferred.

The Court finds that Technicare has alleged sufficient facts, and provided sufficient support therefor, to resist Murphy's motion either to dismiss or for summary judgment.[42] For example, Murphy's knowledge may be inferred from the fact, conceded in his deposition, that he was a former employee of Technicare involved in arranging financing for Technicare customers, which afforded him ready access to documents and other materials. Moreover, it is alleged that Murphy and the other Bridge defendants had in their possession a stolen customer list, which is underscored by Judge Bramwell's finding in the prior trade secrets action that Technicare had "made a substantial showing that Mr. Murphy purloined the information in question after his employment relationship with Technicare soured in June of 1982." Finally, the October 12th letter, which according to Sigmund Weiss was authored by Murphy, is supportive both of his claimed knowledge and intent. It states:

> Until the Tylenol scare, J & J's stock moved upward on favorable reports.... We are fully prepared to help rewrite these reports.... We believe that based upon corporate performance of your subsidiaries our information will negatively

**39.** *See Simmons Ford, Inc. v. Consumers Union of the United States,* 516 F.Supp. 742, 747 (S.D. N.Y.1981).

**40.** *Yiamouyiannis v. Consumers Union of the United States,* 619 F.2d 932, 940 (2d Cir.) (emphasis deleted), *cert. denied,* 449 U.S. 839, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980); *see Herbert v. Lando,* 568 F.2d 974, 980 (2d Cir.1977), *rev'd,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

**41.** *See Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 134 N.E.2d 97, 151 N.Y.S.2d 1 (1956); *AA Tube Testing Co. v. Sohne,* 20 A.D.2d 639, 246 N.Y. S.2d 247 (2d Dep't 1964).

**42.** *Cf. Burns Jackson Miller Summit & Spitzer v. Lindner,* 88 A.D.2d 50, 452 N.Y.S.2d 80 (2d Dep't 1982), *aff'd,* 59 N.Y.2d 314, 451 N.E.2d 459, 464 N.Y.S.2d 712 (1983) (conclusory allegations that institution of illegal transit strike interfered with contractual relations between plaintiff law firm and its clients).

impact customer confidence in your carefully built and excellent image and *will cause a long-term erosion in your market.*

Murphy has provided no affidavit either denying knowledge of Technicare's customers or intent to interfere with its existing or potential contractual relations. Accordingly, his motion with respect to these claims is denied.

### Prima Facie Tort

 Finally, Technicare seeks recovery based on New York's prima facie tort theory of liability. Murphy contends that the claim must be dismissed, or summary judgment granted, because (1) prima facie tort may not be pleaded alternatively, particularly where recovery would undermine explicit policies limiting recovery under other traditional torts; (2) Technicare has failed to plead or raise an issue of fact that Murphy or the Bridge defendants acted "solely" with "disinterested malevolence," unjustifiedly, or without legitimate reason; and (3) Technicare has not pleaded special damages with sufficient particularity.

While, contrary to Murphy's contention, prima facie tort may be pleaded alternatively, nevertheless, the Court finds that Technicare's prima facie tort action should be dismissed. Prima facie tort is not a "catchall" alternative for every cause of action which cannot stand on its legs.[43] It "is designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy."[44] Here, the gravamen of Technicare's action sounds in trade libel or product disparagement. The only purpose served by pleading prima facie tort would be to avoid the express restrictions placed on such actions. This is particularly true given that Technicare faces a threshold barrier in Murphy's claim that the statements it relies upon are privileged.[45] To hurdle that barrier, Technicare must show that the Bridge action was brought with malice and solely for the purpose of disseminating false and disparaging statements concerning its products. "New York courts have consistently refused to allow retaliatory lawsuits based on prima facie tort predicated on the malicious institution of a prior civil action."[46] The Court finds the reasoning of these cases applicable here as well. Moreover, there are sufficient claims already advanced without confounding the jury with resolution of an additional and at times arcane concept.[47] Accordingly, Technicare's prima facie tort allegations are dismissed.

So ordered.

---

**43.** *Kalso Systemet, Inc. v. Jacobs,* 474 F.Supp. 666, 671 (S.D.N.Y.1979); *see Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983); *Belsky v. Lowenthal,* 62 A.D.2d 319, 405 N.Y.S.2d 62 (1st Dep't 1978), *aff'd,* 47 N.Y.2d 820, 392 N.E.2d 560, 418 N.Y.S.2d 573 (1979).

**44.** *Curiano v. Suozzi,* 63 N.Y.2d 113, 118, 469 N.E.2d 1324, 1327, 480 N.Y.S.2d 466, 469 (1984); *see Belsky v. Lowenthal,* 62 A.D.2d 319, 405 N.Y.S.2d 62 (1st Dep't 1978), *aff'd,* 47 N.Y.2d 820, 392 N.E.2d 560, 418 N.Y.S.2d 573 (1979).

**45.** *See supra* text accompanying notes 16–17; *see also National Nutritional Foods Ass'n v. Whelan,* 492 F.Supp. 374 (S.D.N.Y.1980).

**46.** *Curiano v. Suozzi,* 63 N.Y.2d 113, 118, 469 N.E.2d 1324, 1327, 480 N.Y.S.2d 466, 469 (1984); *see id.* at 118, 469 N.E.2d at 1328, 480 N.Y.S.2d at 470 ("[E]ven assuming an action for malicious prosecution lies after the [underlying] case is completed, plaintiffs should not be allowed to plead prima facie tort in the alternative").

**47.** *See Rosemont Enterprises, Inc. v. Random House, Inc.,* 261 F.Supp. 691, 697 (S.D.N.Y. 1966).