**Daniel A. WILLSON and Donna L. Powers–Willson, Plaintiffs,**

v.

**ASSOCIATION OF GRADUATES OF THE UNITED STATES MILITARY ACADEMY, West Point Federal Credit Union, and Seth F. Hudgins, Jr., Defendants.**

**No. 95 Civ. 3825 (JSR).**

United States District Court, S.D. New York.

Nov. 26, 1996.

---

Drake Sommers Loeb Tarshis & Catania PC by Richard Mahon, Newburgh, NY, for Plaintiff.

Henry & Regan–Henry by John Henry, White Plains, NY, for Defendant, Association of Graduates.

Pattison & Flannery by Thomas Pattison, New York City, for Defendant, Hudgins.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Following full review of the parties' written submissions and oral arguments, the Court telephonically advised the parties on November 6, 1996 that certain of their motions for summary judgment had been granted and others denied. This memorandum will serve to confirm those rulings and briefly to state some of the reasons therefor. Familiarity with the record underlying the motions is presumed.

Plaintiff Daniel A. Willson was hired in May, 1992 by defendant Association of Graduates ("AOG") of the United States Military Academy. AOG serves as West Point's alumni association and fund-raising organization, and Willson was a "major gift officer," responsible for soliciting contributions from wealthy alumni. Throughout the relevant period, however, plaintiff's wife, co-plaintiff Donna Powers–Willson, suffered from Lyme disease, chronic fatigue syndrome, and depression, as a result of which she was unable to accompany her husband to various AOG social events. Plaintiffs allege that these and other inconveniences resulting from Powers–Willson's ailments led Willson's superior, defendant Seth F. Hudgins, Jr., to treat Willson in a discriminatory fashion and, eventually, to terminate Willson in January, 1994. Plaintiffs allege that such conduct supports federal claims against AOG and Hudgins under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq., as well as state law claims against defendant Hudgins for prima facie tort and breach of fiduciary duty.[1] In turn, AOG and Hudgins assert counterclaims against the plaintiffs for

slander and prima facie tort. Both sides have moved for summary judgment.

■ Turning first to the ADA claim, while it is clear from the face of the statute that Willson can sue for discrimination directed against him on account of his wife's disabilities, 42 U.S.C. § 12112(b)(4), there is nothing in the statute or case law that suggests that Powers–Willson has standing to sue her husband's employer for such discrimination. Consequently, the ADA claim brought by Powers–Willson must be dismissed.

■ However, the Court rejects defendants' contention that Willson's ADA claim must be dismissed because he has failed to show that his wife's disability was the "sole" cause of his termination. Conceding that a plaintiff under the ADA need not prove that his own disability was the sole cause of his discriminatory treatment but only a substantial factor in such treatment, *see Heilweil v. Mt. Sinai Hospital*, 32 F.3d 718, 722 (2d Cir.1994), defendants nevertheless contend that such causal exclusivity should be required where the discriminatory treatment derives from someone else's disability. We know of no sound basis for this imaginative suggestion, and decline to adopt it.

■ Defendant AOG also seeks dismissal of the ADA claim on the ground that it is a "bona fide private membership club" exempt from ADA coverage. *See* 42 U.S.C. § 12111(5)(B)(ii). In order to qualify for this exemption, AOG must prove that it is "an association of persons for social or recreational purposes ..., [is] legitimate (as opposed to sham), private (as opposed to public), and ... require[s] some meaningful conditions of limited membership." *Quijano v. Univ. Federal Credit Union*, 617 F.2d 129, 131 (5th Cir.1980). Genuine and material factual disputes over AOG's conformance with this test preclude summary judgment on this issue. For example, plaintiffs have adduced evidence that AOG's primary function is simply to raise money for the United

---

1. The latter claim also premises Hudgins' alleged misuse of confidential financial information relating to Willson that Hudgins obtained in his role as a member of the board of defendant West

Point Federal Credit Union. However, plaintiffs have withdrawn their claims against the Credit Union itself, which is hereby dismissed with prejudice from this action.

States Military Academy, and defendants themselves offer an exhibit that states that the "fraternal activities" of West Point graduates are left, not to AOG, but to various local West Point societies and clubs. Defendants' Cross–Motion for Dismissal and/or Summary Judgment, Ex. 1 at 2. Furthermore, while tax-exempt status alone is insufficient to define an organization as private, *see Baptiste v. Cavendish Club, Inc.*, 670 F.Supp. 108, 109 (S.D.N.Y.1987), here in any case the AOG's tax-exempt status was granted, not because of the private nature of the organization, but because the AOG was "so closely integrated with the United States Military Academy that [it is] entitled to exemption from Federal income tax." Def. Ex. 1, *supra*, at 2. Finally, the members of AOG have no control over the membership pool, which is a touchstone of a bona fide private club. *See Equal Employment Opportunity Comm'n v. Chicago Club*, 86 F.3d 1423, 1436 (7th Cir.1996).

▓ Turning to the state law claims, while both sides have alleged claims of "prima facie tort" arising from their adversaries' alleged misconduct in this controversy, neither side has adduced the *sine qua non* of such a claim, *i.e.* proof from which a reasonable juror could find that "disinterested malevolence" was the sole motivation for the alleged misconduct. *See Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983). Consequently, both such claims must be dismissed.[2]

As to plaintiff's claim that defendant Hudgins breached his fiduciary duty by misusing financial information he obtained in his capacity as a member of the board of the West Point Federal Credit Union to discriminate against Willson at AOG, plaintiff's only proof, apart from vague and conclusory allegations, is some brief and wholly inadmissible hearsay. *See* Affidavit of Daniel Willson in Opposition to Defendants' Motion for Partial Summary Judgment and/or Dismissal at ¶ 16. Thus, summary judgment must be granted on this claim.

▓ On the other hand, defendants' counterclaim against Willson for slander based on various statements made to newspaper reporters survives summary judgment. While Willson contends that these statements were privileged under both the common law and New York statutory law, *see* N.Y.Civ.Rights Law § 74, the common law privilege applies only to statements made "during the course of judicial proceedings," *Bridge C.A.T. Scan Assoc. v. Ohio–Nuclear*, 608 F.Supp. 1187, 1194 (S.D.N.Y.1985) (applying New York law), while the statements here were allegedly made in a press conference in plaintiff attorney's office. As to the statutory privilege, while "New York courts have extended the privilege to comments made by attorneys to the press in connection with the representation of their clients.... [t]he privilege does not extend, however, to parties who maliciously institute a proceeding alleging false and defamatory charges and publicize them in the press." *McNally v. Yarnall*, 764 F.Supp. 853, 855 (S.D.N.Y. 1991). Here, AOG's evidence that the underlying suit was purposefully brought by plaintiffs with malice, while thin, is sufficient to defeat summary judgment. *See Bridge C.A.T. Scan*, 608 F.Supp. at 1195.[3]

In summary: (i) defendant West Point Federal Credit Union is dismissed from this action on consent; (ii) summary judgment is granted to defendant Hudgins on both claims against him, to defendant AOG as to the claims of plaintiff Donna Powers–Willson, and to plaintiff Daniel Willson on defendants' prima facie tort claim; and (iii) all other motions are denied. Trial of the remaining

---

2. In addition, defendants' claim of prima facie tort is facially defective for failure to plead special damages. *See Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985).

3. Although Willson argues that AOG's slander claim is tantamount to making a claim of malicious prosecution without meeting the threshold requirement of an outcome favorable to the party seeking relief, the elements of the two causes of action are sufficiently different as not to be read *in pari materia*. For example, to prevail on the slander claim, AOG must prove, *inter alia*, that Willson "purposefully initiated widespread publication" of the slander, *see Bridge C.A.T. Scan*, 608 F.Supp. at 1196 n. 26, a burden considerably heavier in this respect than what is required to prove malicious prosecution.

claims, consisting of Willson's ADA claim against AOG and AOG's slander claim against Willson, will commence with jury selection on March 3, 1997 at 9:00 a.m.

SO ORDERED.