FILED
12/22/2025
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 16, 2025 Session

# ABDOULAYE MAMADOU v. GATTI, KELTNER, BIENVENU & MONTESI, P.C.

### Appeal from the Circuit Court for Shelby County
### No. CT-3240-23     W. Mark Ward, Senior Judge

_____

## No. W2024-01262-COA-R3-CV

_____

The trial court granted summary judgment to the defendant law firm in this legal malpractice action on the basis that the plaintiff failed to present expert proof in support of his claim that the defendant law firm breached the standard of care. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ANDY D. BENNETT, and KENNY ARMSTRONG, JJ., joined.

Abdoulaye Mamadou, Memphis, Tennessee, Pro se.

Brian F. Walthart and Matthew T. Byron, Nashville, Tennessee, for the appellee, Gatti, Keltner, Bienvenu & Montesi, P.C.

## MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2010, Plaintiff/Appellant Abdoulaye Mamadou ("Appellant") hired Defendant/Appellee law firm Gatti, Keltner, Bienvenu & Montesi, P.C. ("Appellee") to handle a workers' compensation claim against Appellant's employer, Harrah's Casino, in Mississippi. Attorney David Reid Wamble primarily handled the case.

A trial before an administrative judge occurred in which Appellant was awarded wage-loss benefits in the total amount of $101,501.05. Harrah's Casino appealed the judgment to the Mississippi Workers' Compensation Commission ("MWCC"), which resulted in Appellant's award slightly increasing to $102,153.56 by order of October 11, 2016. The final sentence of the MWCC order stated that Appellant's "matter is remanded to the Administrative Judge for all further proceedings as may be necessary in this claim."

The monetary award was disbursed on or about December 1, 2016. Appellee was paid twenty-five percent of the award plus expenses, pursuant to the parties' contract. On December 1, 2016, Appellant executed a two-page "Authorization" detailing the expenses and attorney's fees that were associated with the representation and that would be deducted from the award, which the parties appear to refer to as a "Disbursement Sheet." The Disbursement Sheet states that Appellant "understand[s] and approve[s] the [] settlement disbursements and acknowledge[s] the settlement and disbursements are in accord with [his] instructions and understanding." On the same day, Appellant also executed a document titled "Authority to Settle and Affidavit" in which Appellant affirmed the following:

> I am completely satisfied with the professional services rendered by the law firm of [Appellee] and by the law firm of D. Reid Wamble, Attorney at Law, and I authorize and direct the complete settlement of my case. I have no reservations whatsoever with the acceptance of the final settlement amount of $102,153.56, nor with the disbursement, the amount, or the percentage of the attorney's fees. Said attorney fees are fair and commensurate with the amount of work that law firm of [Appellee] and the law firm of D. Reid Wamble performed on my case and the amount contracted to between [Appellee] and myself. I certify that there are no other outstanding expenses in this case, but if any other expenses should come to my attention, or to the attention of my attorneys at a later date, I expressly agree to be responsible for their payment thereof and to hold [Appellee] and D. Reid Wamble, Attorney at Law harmless regarding the same.[2]

---

[2] Appellant did not dispute that he signed this form but did dispute that he understood the effect of the form given his limited English proficiency. Still, one of the undisputed material facts that he submitted was as follows: "It is true and correct that when [Attorney] Wamble had [Appellant] sign the Disbursement Sheets, Attorney Wamble did everything to make sure [Appellant], at minimum, fully understood the Disbursement Sheet's meaning and effect without having a translator." Again, the Disbursement Sheet and

Immediately after December 1, 2016, Appellant began to have concerns that he had not been paid all of the benefits to which was entitled; Appellant promptly communicated his concerns to Attorney Wamble. Attorney Wamble allegedly responded that Appellant had received all that he was entitled to under Mississippi law.

On August 10, 2023, Appellant filed a pro se complaint against Appellee in the Shelby County Circuit Court ("the trial court"). The complaint alleged that Attorney Wamble committed legal malpractice in not pursuing the full amount of workers' compensation benefits to which Appellant was entitled. As for the specific negligence at issue, Appellant alleged that Appellee, through Attorney Wamble, failed to inform him that the workers' compensation carrier filed a "B-31 form" in 2019 or that his benefits were terminated as a result of the filing of this form.[3] So Appellant contended that Appellee "should have withdrawn from [his] case and allowed [him] to handle it [himself], or even given the option to hire another attorney to do it for [him.]" Rather, Appellee allegedly did not inform Appellant of the filing of this form until 2022. At this point, Appellant contacted the MWCC. According to the complaint, the MWCC advised Appellant that "they could not speak with [Appellant] regarding [his] claim, due to [him] having legal counsel. Because of this, [Appellant] requested that [Attorney Wamble] be withdrawn from [the] case." Attorney Wamble then formally withdrew from the workers' compensation action, allowing Appellant "to speak with the insurance carrier, and [he] was then reimbursed for all my medications, which [he] had been complaining about for the last several years." According to Appellant, however "when [he] filed a motion for reconsideration, [the] request was denied, due to untimely filing . . . . This has caused a tremendous strain on [Appellant], financially[.]"[4]

---

the Authority to Settle and Affidavit were signed on the same day.

[3] Mississippi law requires that

> [w]ithin thirty (30) days after the final payment of compensation has been made, the employer shall send to the commission a notice in accordance with a form prescribed by the commission, stating that such final payment has been made, the total amount of compensation paid, the name of the employee and of any other person to whom compensation has been paid, the date of the injury or death, and the date to which compensation has been paid.

Miss. Code Ann. § 71-3-37(7). Rule 2.17 of the Rules of the Mississippi Workers' Compensation Commission provides that an "[e]mployer or carrier's filing of a properly completed Form B-31 shall constitute compliance with the requirements of Miss. Code Ann. Section 71-3-37(7)." The notice is mailed to both the counsel for the claimant and the claimant. *Id.* A claimant generally has one year from this filing to seek modification of the award on the basis of "a change in conditions or because of a mistake in a determination of fact[.]" Miss. Code Ann. § 71-3-53.

[4] Appellant later submitted an April 17, 2023 order issued by an administrative judge with the MWCC, providing the following information about his request for additional lost wages:

The Employer/Carrier filed a Form B-31 on April 4, 2019. On February 18, 2022,

Appellee filed an answer on September 1, 2023, generally denying the material allegations of the complaint and raising several affirmative defenses, including the expiration of the statute of limitations. Then, on October 31, 2023, Appellee filed a motion for summary judgment on essentially three grounds: (1) that the complaint was filed outside the one-year statute of limitations applicable to legal malpractice actions; (2) that Appellant was not damaged nor did Appellee breach a duty of care because Appellant received all of the benefits that he was entitled to under Mississippi law; and (3) that Appellant lacked expert proof to rebut the evidence of Appellee's expert that no negligence was committed in this case. In support of this motion, Appellee filed the declaration under penalty of perjury of Attorney Wamble, which stated in relevant part that "[n]either I, nor anyone affiliated with [Appellee], committed any act or omission that fell below the applicable standard of care in handling [Appellant's] workers' compensation suit." Attorney Wamble further stated that Appellant was not entitled to any further workers' compensation benefits under Mississippi law.

Appellee responded in opposition, filing his own "affidavit" that was neither sworn, notarized, nor declared under penalty of perjury. Appellant also filed a memorandum of law, a response to Appellee's statement of undisputed material facts, and a statement of additional undisputed material facts. Appellant did not, however, provide any expert testimony in support of his legal malpractice claim. Appellant later filed a motion to dismiss Appellee's motion for summary judgment, as well as a "Motion to Dismiss Attorney Wamble as a witness" on the basis that his declaration contained contradictions and that Attorney Wamble is biased. So Appellant asked that Attorney Wamble's declaration not be considered.

On March 1, 2024, the trial court judge originally assigned this case, the Honorable Felicia Corbin Johnson, filed a sua sponte order recusing herself from this matter, and referring it to the presiding judge for reassignment. Chief Justice Holly Kirby thereafter entered an order designating Senior Judge Mark Ward to preside over this case.

---

[Appellant] filed a letter requesting information about the refusal by the Employer/Carrier to pay for medications from 2017–2021. [Appellant] also asked for lost wages since the date of his termination from the Employer/Carrier. On September 27, 2022, [Appellant's] attorney was withdrawn from the matter by Order of the Administrative Judge.

On February 10, 2023, [Appellant] filed another letter requesting payment of lost wages since 2009. . . . [Appellant] requested payment of lost wages by the Employer/Carrier. . . . [Appellant] also mentioned that his medications were not paid by the Employer/Carrier from 2017 until 2021. There was no further information about his medications.

After the Full Commission entered an Order with regard to [Appellant's] claim for permanent disability and medical treatment, [Appellant] did not file an appeal or a Motion to Reconsider within the required time period. Therefore, [Appellant's] request for additional payments for lost wages is not under the jurisdiction of the [MWCC]. As to the prescription medication that [Appellant] has mentioned, [Appellant] has not provided any medical proof to support such a claim. Therefore, this request is hereby denied.

The trial court entered a detailed order granting Appellee's motion for summary judgment on July 31, 2024. Therein, the trial court characterized Appellant's action as premised on the last line of the MWCC order remanding the matter back to the administrative judge for further proceedings as necessary. According to the trial court, Appellant "interprets this remand language as authorizing the trial court to fully reopen the case so that he could pursue additional permanent partial disability benefits [wage-loss benefits] beyond those that he was awarded on appeal." (Brackets in original). The trial court disagreed, however, and ruled that the order "sets forth a final determination of [Appellant's] entitlement to permanent partial disability payments." The trial court further found that "the remand language does not explicitly state that it was the intent of the [MWCC] to allow the case to be reopened, and [Appellant] provides no legal authority in support of his legal interpretation of the language." Ultimately, the trial court found that "[i]n fact, such routine language does not authorize the case to be reopened[.]"

Moreover, the trial court ruled that under either Mississippi or Tennessee law, Appellant was required to support his legal malpractice claim with expert testimony. The trial court noted that Attorney Wamble filed a declaration in which he asserted that neither he nor Appellee committed negligence in connection with the representation of Appellant. And the trial court rejected Appellant's efforts to "dismiss" Attorney Wamble's statement, ruling that attorneys are often permitted to use their own testimony in support of a motion for summary judgment in a legal malpractice action. Moreover, the relevant part of Attorney Wamble's statement did not contain "potentially conflicting factual information" such that it could not be considered in connection with Appellee's motion for summary judgment. Thus, the trial court ruled that Appellee shifted the burden to Appellant to submit expert proof to refute Appellee's expert proof that it did not violate the standard of care. The trial court therefore ruled that Appellee was entitled to summary judgment. As a result, the trial court denied Appellant's motion to dismiss Attorney Wamble as a witness as well as his motion to dismiss Appellee's motion for summary judgment.

Finally, the trial court ruled that while Appellant maintains that his lawsuit does not concern the December 1, 2016 award and settlement, "[t]o the extent, that [Appellant] might reverse his course and contend that his attorneys committed malpractice in the case that they won at trial and again on appeal, the statute of limitations presents an insurmountable hurdle for [Appellant] as this lawsuit is time-barred under both Mississippi and Tennessee law." From this order, Appellant now appeals.

## II. ISSUES PRESENTED

Appellant raises three issues, which are taken from his brief:

1. Whether [the trial court] erred by failing to consider [Appellee's] failure to negate my essential element of a malpractice claim, which

- 5 -

is [Appellee] failed to inform me the carrier filed B-31, and withdraw from my case any time before April 4, 2020, after [Appellee] relinquished his responsibility for the matter on December 1, 2016. As matter fact of the law Tenn. R. Civ. P. 11.01 [Appellee] should have notified me that the carrier filed B-31 on April 4, 2019, and notified me that I must respond to the carrier filing B-31 before April 4, 2020, because I had one year to report any additional lost wages after the carrier filed B-31.

2. [The trial court] erred in granting [Appellee] summary judgment because there was a genuine issue of material fact regarding whether order of the [MWCC] on October 11, 2016, "This matter is remand to the Administrative Judge "for all further proceedings" as may be necessary in the claim," was the intent of the [MWCC] to remand my case to the Administrative Judge "for all further proceedings" with my additional lost wages because the remand was interlocutory order and it was not final order, or it was the intent of the [MWCC] to conclude my case on October 11, 2016, Appeal, as the [trial court] noted.

3. [The trial court] erred in time-barred because there was a genuine issue of material fact regarding whether the statute of limitations began to run when I found out the carrier filed B-31 on November 23, 2022, or when I discovered the damages on April 17, 2023, when [the administrative judge] denied my Motion to reconsider the B-31 because I did not file my Motion to reconsider within required time period, or the statute of limitations began to run on December 1, 2016, When [Attorney] Wamble reversed the [MWCC] order as settlement.

(Record citations omitted). As we perceive it, the following issue is dispositive of this appeal: whether the trial court erred in concluding that Appellee was entitled to summary judgment due to Appellant's failure to provide expert proof in support of his legal malpractice claim.[5]

---

[5] On appeal, Appellee also raises as an issue Appellant's failure to comply with this Court's briefing requirements contained in Rule 27(a) of the Tennessee Rules of Appellate Procedure. Although we agree that Appellant's brief does not fully comply with Rule 27(a), we disagree that the waiver of all Appellant's arguments is appropriate. Instead, we will attempt to address the non-skeletal arguments in Appellant's brief concerning the dispositive issue on appeal. In doing so, we keep in mind that while Appellant is granted "a certain amount of leeway in drafting [his] pleadings and briefs[,]" *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citations omitted), it is nevertheless well-settled that "[p]ro se litigants must comply with the same substantive and procedural law to which represented parties must adhere." *Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009). So "[w]hile a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, '[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts.'" *Id.* (first citing *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); and then quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)); *see also Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) ("*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden.").

### III. STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), *holding modified by Rye*, 477 S.W.3d 235. We similarly accept the evidence presented by the nonmoving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. When a motion for summary judgment is made and supported as provided in Rule 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue of material fact to be resolved at trial. *Id.*

### IV. ANALYSIS

In this case, the gravamen of Appellant's complaint is that he was injured due to Appellee's professional negligence. In Tennessee, a legal malpractice case such as this one requires that the plaintiff prove the following essential elements:

> (1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages.

*Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001). The Tennessee Supreme Court has further held that proof of the standard of care "must be by expert testimony":

> Whether a lawyer's conduct meets the applicable professional standards is

generally believed to be beyond the common knowledge of laypersons. Thus, except in cases involving clear and palpable negligence, most courts considering the issue have held that cases of legal malpractice cannot be decided without expert proof regarding the applicable standard of care and whether the lawyer's conduct complies with this standard.

***Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.***, 813 S.W.2d 400, 406 (Tenn. 1991) (quoting ***Cleckner v. Dale***, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986), *abrogated in part on other grounds by **Chapman v. Bearfield***, 207 S.W.3d 736 (Tenn. 2006)). A limited exception to the expert proof requirement exists when there is "clear and palpable negligence[.]" ***Strong v. Baker***, No. M2007-00339-COA-R3-CV, 2008 WL 859086, at *7 (Tenn. Ct. App. Mar.31, 2008). This exception applies, however, only in "extreme cases"; in all other cases, "if a defendant-attorney presents expert proof that he or she did not breach the duty of care, the plaintiff-client must present rebuttal expert proof that a breach of care did occur in order to create a genuine issue of material fact." ***Id.***

The same is generally true under Mississippi law, which is arguably the more appropriate law to apply in this case. *See generally **Hataway v. McKinley***, 830 S.W.2d 53, 59 (Tenn. 1992) (discussing Tennessee's choice of law rules). In Mississippi, in order to make out a legal malpractice claim, the plaintiff is required to prove three elements: "(1) an attorney-client relationship; (2) the attorney's negligence in handling the client's affairs; and (3) proximate cause of the injury." ***Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.***, 100 So. 3d 420, 424 (Miss. 2012). Moreover, like in Tennessee, when a plaintiff alleges that a defendant-attorney breached the standard of care—that is, was negligent in "exercising the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated"—"[c]learly established law provides that expert testimony is necessary" to establish the claim. ***Lane v. Oustalet***, 873 So. 2d 92, 98 (Miss. 2004). If, however, the claim involves only a "breach of the standard of conduct," i.e., claims based on a breach of a fiduciary duty, ***id.***, or when "[o]rdinary jurors possess the requisite knowledge and lay expertise to determine" whether there is a breach of duty, such as by having an adulterous affair with a client's wife, the expert proof requirement is excused. ***Pierce v. Cook***, 992 So. 2d 612, 618 (Miss. 2008); *see also **Crist v. Loyacono***, 65 So. 3d 837, 842 (Miss. 2011) ("The law recognizes a clear distinction between allegations of legal malpractice based on negligence (sometimes called a breach of the standard of care) and those based on breach of fiduciary duty (sometimes called a breach of the standard of conduct).").

Here, Appellee submitted the declaration of Attorney Wamble that neither he nor anyone affiliated with Appellee breached the standard of care in their representation of Appellee. This declaration negated the essential element of breach of duty under either

Tennessee or Mississippi law.[6] The burden therefore shifted to Appellant to present expert proof in support of his claim that Appellee breached the standard of care or else demonstrate why such proof was unnecessary in this case.

There is no dispute that Appellant did not submit any expert proof in support of his claim that Appellee breached the standard of care. Rather, in his brief, he contends that expert proof was not necessary in this case because it involves "clear and palpable negligence" under the Tennessee standard.[7] Appellant cites no cases, however, in which either Tennessee or Mississippi courts have excused a plaintiff's failure to submit expert proof in a case with similar facts. Our review of Appellant's claims leads us to conclude that the expert proof requirement is not excused in this case.

Here, Appellant essentially asserts that (1) the MWCC order should be interpreted

---

[6] In the trial court Appellant filed a motion essentially seeking to deem Attorney Wamble's declaration inadmissible for purposes of summary judgment. The trial court undertook a thorough analysis of that issue and denied the motion. Appellant has neither designated the denial of that motion as an issue on appeal or reiterated the bases for that motion in his appellate brief. Instead, he asserts that the declaration contains false statements, based on Appellant's own opinion as to his entitlement of benefits under Mississippi law, and that Attorney Wamble's opinion should be excluded under Rule 703 of the Tennessee Rules of Evidence. Appellant also discussed Attorney Wamble's alleged bias at oral argument. In an abundance of caution, we have reviewed the trial court's ruling and find no error therein.

As the trial court correctly points out, this Court has often relied on a defendant's own self-serving affidavit that they complied with the standard of care in support of a motion for summary judgment. *See, e.g.*, *Kenyon v. Handal*, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003) ("It is now commonplace for medical practitioners to use these statutory requirements to put their patient's claim to the test by forcing them to reveal the identity of their testifying experts early in the litigation. The practitioners' chosen vehicle is a motion for summary judgment supported by their own self-serving affidavit stating that their conduct neither violated the applicable standard of care nor caused injury to their patient that would not otherwise have occurred. An affidavit of this sort effectively negates the negligence allegations in the patient's complaint and effectively forces the patient to demonstrate the existence of a genuine, material factual dispute warranting a jury trial." (footnote omitted)); *Grose v. Kustoff*, No. W2021-00427-COA-R3-CV, 2022 WL 2347798, at *9 (Tenn. Ct. App. June 29, 2022) (holding that the defendant-attorney's own declaration negated the essential element of a breach of the standard of care). Appellant has submitted no authority to demonstrate that the law is different in Mississippi, nor does he in any way suggest that we should apply Mississippi law to this issue. *Cf.* *Walker By & Through Walker v. Skiwski*, 529 So. 2d 184, 187 (Miss. 1988) (holding that the defendant-physician was entitled to summary judgment where he filed three affidavits, one of which was his own self-serving affidavit that he complied with the standard of care). *But see Restatement (Second) Conflict of Laws* § 138 (1971) ("[Q]uestions relating to the admissibility of evidence, whether oral or otherwise, should usually be determined by the local law of the forum.").

Moreover, the alleged contradictions in Attorney Wamble's declaration are essentially arguments against Attorney Wamble's legal conclusions and have no relevancy to the portion of the declaration relied upon for purposes of this appeal. And Appellant did not raise an objection to Attorney Wamble's testimony under Rule 703 in the trial court. *See Lawrence v. Stanford*, 655 S.W. 2d 927, 929 (Tenn. 1983) ("It has long been the general rule that questions not raised in the trial court will not be entertained on appeal."). The trial court therefore did not err in considering Attorney Wamble's declaration.

[7] Appellant does not assert that his claim involves a breach of a fiduciary duty. Instead, he characterizes his claim as based on Appellee's negligence.

such that his ability to seek additional lost wages was reopened upon remand and so did not constitute a final order as to his entitlement to workers' compensation benefits; (2) that the documents signed by Appellant on December 1, 2016 were settlement documents that Appellant did not understand and should have been presented to the MWCC under Mississippi law; (3) that Attorney Womble should have filed a notice to withdraw from the MWCC action under sections (b) and (c) of Tennessee Rule of Civil Procedure 11.01 prior to the filing of the B-31 form and/or should have informed Appellant of the filing of the B-31 form;[8] and (4) that because Appellee pressed Appellant to sign the settlement documents and failed to timely withdraw from the representation, Appellant was prevented from seeking additional lost wages that he believes he is entitled to. Appellant's theory therefore involves the proper legal effect and interpretation of the MWCC order, the amount of benefits that Appellant was legally entitled to under Mississippi law, and the duties of an attorney in light of the MWCC order and all the surrounding circumstances.[9] The duty that an attorney owes under these circumstances and whether Appellee's conduct fell below the applicable standard of care are, respectfully, simply not within the common knowledge of laypersons. Appellant was accordingly required to provide expert proof in support of his

_____

[8] Rule 11.01 provides in relevant part, as follows:

(b) Appearance of Counsel and Notification by Counsel Subject to Limited Scope Representation. An attorney providing limited scope representation to an otherwise unrepresented party shall file at the beginning of the representation an initial notice of limited scope representation with the court, simply stating that the representation is subject to a written limited scope representation agreement without disclosing the terms of the agreement. In addition to the initial notice of limited scope representation, when provided notice by another party, attorney or the court of a motion, pleading, discovery, hearing or other proceeding that is outside of the scope of the services provided pursuant to the limited scope representation agreement, an attorney shall promptly file a notice of limited appearance that the attorney does not represent the otherwise unrepresented party for purposes of the motion, pleading, discovery, hearing or other proceeding. The notice of limited appearance shall simply state that the limited scope representation does not include representation for purposes of the motion, pleading, discovery, hearing or other proceeding noticed and shall not otherwise disclose the terms of the limited scope representation agreement. The notice of limited appearance shall provide the otherwise unrepresented client with the deadline(s), if any, for responding to the motion, pleading, discovery, hearing or other proceeding and shall state the date, place and time of any hearing or other proceeding. If an initial notice of limited scope representation or a notice of limited appearance is filed, service shall be made as provided in Rule 5.02.
(c) Withdrawal of Counsel Upon Completion of a Limited Scope Representation. Upon the filing of a notice of completion of limited scope representation that is accompanied by a declaration from the attorney indicating that the attorney's obligations under a limited scope representation agreement have been satisfied, and that the attorney provided the otherwise unrepresented person at least fourteen (14) days advance written notice of the filing of notice of completion of limited scope representation, the attorney shall have withdrawn from representation in the case.

[9] Not to mention, of course, the question of whether an attorney in a Mississippi action was required to comply with a Tennessee procedural rule.

claim that Appellee breached the applicable standard of care. Without that proof, Appellee is correct that Appellant cannot establish an essential element of his claim. The trial court's decision to grant summary judgment to Appellee on this basis is therefore affirmed.[10]

## IV. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this cause is remanded to the trial court for further proceedings only as necessary and consistent with this Opinion.[11] Costs of this appeal are taxed to Appellant, Abdoulaye Mamadou, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[10] The parties both spill considerable ink in their briefs on other issues, including how the Workers' Compensation Order should be interpreted, whether Appellant would have been entitled to any additional lost wages under Mississippi law, Appellee's statute of limitations affirmative defense, disputes over facts surrounding the representation of Appellant by Appellee, arguments concerning the documents signed by Appellant on December 1, 2016, and Appellant's understanding of the documents, given his limited English proficiency. All of the additional arguments and issues raised by the parties in their briefs are pretermitted by our decision.

[11] For the sake of clarity, this remand language is not intended to authorize the re-opening of any substantive matters or to render this ruling non-final.